KENT COUNTY AERONAUTICS BOARD v DEPARTMENT OF
STATE POLICE
ADA TOWNSHIP v DEPARTMENT OF STATE POLICE
BYRNE v STATE OF MICHIGAN

Docket Nos. 210067, 210448, 210852. Submitted June 1, 1999, at Grand
    Rapids. Decided February 4, 2000, at 9:00 A.M.

    The Kent County Aeronautics Board (hereinafter Kent County), Ada
        Township, and Norman Byrne and others, brought three separate
        actions in the Kent Circuit Court against the Department of State
        Police and the State of Michigan, seeking to enjoin the defendants'
        construction of a radio communications tower. The State Police
        and Motorola Communications and Electronics, Inc., pursuant to
        MCL 28.282(2); MSA 4.492(2), as amended by 1996 PA 538, had
        notified Ada Township and Kent County of their intent to construct
        in the vicinity of Honey Creek Avenue and Three Mile Road a 475-
        foot radio communications tower as part of the Michigan Public
        Safety Communications System. As required by the statute, the
        notice informed the township and the county of the requirements
        necessary for a tower site and that the township and the county
        had thirty days in which to grant a special use permit if the pro-
        posed tower did not comply with zoning restrictions, or to propose
        an equivalent site. The statute provides that if a special use permit
        is not granted or if a proposed alternative site does not meet the
        siting requirements, the department may proceed with construc-
        tion. The Ada Township Planning Commission approved a special
        use permit that limited the tower height to 175 feet, applied set-
        back and other restrictions contained in the township zoning ordi-
        nance, and incorporated height restrictions contained in the Kent
        County International Airport Zoning Ordinance. Kent County
        neither proposed an alternative site nor issued a special use permit,
        and instead advised the State Police that it must apply for a permit
        to construct the tower. The State Police and Motorola commenced
        construction of the Honey Creek tower as originally proposed, and
        these actions ensured. The court, Robert A. Benson, J., allowed
        Motorola to intervene as a defendant and granted summary disposi-
        tion for the defendants. The plaintiffs appealed, and their appeals
        were consolidated.

The Court of Appeals *held*:

1. The Honey Creek tower is not subject to local zoning ordinances. The Legislature, in enacting 1996 PA 538, intended to vest the State Police with complete authority over the construction of a tower for the Michigan Public Safety Communications System such that if a local unit of government does not grant a special use permit or suggest an equivalent, alternative site within thirty days, the State Police may proceed with construction at the original proposed site despite any apparent zoning violations.

2. The trial court did not err in granting summary disposition against Kent County. 1996 PA 538 preempts all local zoning restrictions, including height restrictions of the sort the county sought to enforce. The county is a local unit of government with zoning authority within the meaning of 1996 PA 538 and thus is subject to its provisions.

3. The trial court did not err in granting summary disposition against Ada Township. The township cannot challenge the constitutionality of 1996 PA 538 on due process grounds because the township, as a local government unit, is a creature of legislation and does not have standing to challenge the constitutionality of a statutory provision enacted by the Legislature. The equivalent site criteria promulgated by the State Police were not rules subject to the rule-making requirements of the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.* The criteria were in the nature of an intergovernmental, interagency, or intra-agency memorandum, directive, or communication that does not affect the rights of, or procedures and practices available to, the public and, as such, are excluded by MCL 24.207(g); MSA 3.560(107)(g) from the definition of "rule." The criteria also do not have the force and effect of law but are merely explanatory and therefore are excluded from the definition of "rule" pursuant to MCL 24.207(h); MSA 3.560(107)(h). The construction of the disputed tower has rendered moot the township's claim that a preliminary injunction was necessary to preserve the status quo pending the resolution of this matter.

4. The trial court did not err in granting summary disposition against Byrne and the other property owners. These plaintiffs' claims regarding violation of local zoning regulations and noncompliance with the rule-making requirements of the Administrative Procedures Act lack merit for the same reasons similar claims by the county and the township were rejected. Because the State Police is exempt from local zoning ordinances in connection with the construction of the tower, the claimed zoning violation arising from the construction of the tower cannot constitute a nuisance

per se under MCL 125.294; MSA 5.2963(24), which provides that a use of land in violation of a local ordinance or regulation adopted pursuant to the Township Zoning Act, MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, is a nuisance per se. The property owners failed to establish a trespass-nuisance claim not barred by governmental immunity. 1996 PA 538 was a valid, constitutional delegation of legislative authority inasmuch as the standards set by the act with respect to site requirements and site selection by the State Police were as reasonably precise as the subject matter requires or permits.

Affirmed.

1. STATUTES — MICHIGAN PUBLIC SAFETY COMMUNICATIONS SYSTEM — BUILDINGS AND EQUIPMENT — LOCAL ZONING ORDINANCES.

The siting of buildings and equipment necessary to implement the Michigan Public Safety Communications System is within the exclusive jurisdiction of the Department of State Police; a local unit of government with zoning authority may grant a special use permit for a proposed building or equipment that does not comply with a zoning ordinance, or may propose an alternative site, but the department can ultimately proceed with construction as originally proposed where a special use permit is not issued or a proposed alternative site does not meet the department's siting requirements (MCL 28.282; MSA 4.492).

2. CONSTITUTIONAL LAW — STATUTES — CHALLENGE BY LOCAL GOVERNMENTS.

Local government units are only creatures of legislation and, except with respect to certain constitutional grants and limitations of power, lack standing to challenge the constitutionality of a statutory provision enacted by the Legislature.

3. ADMINISTRATIVE LAW — DELEGATION OF POWERS — STATUTES.

A three-part test is used for determining whether a statutory delegation of legislative power to an administrative agency is valid: the act must be read as a whole, the act is presumed constitutional, and the standards must be as reasonably precise as the subject matter requires or permits.

*Law, Weathers & Richardson, P.C.* (by *Robert A. Buchanan*), for Kent County Aeronautics Board.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Jeffrey S. Ammon* and *James R. Peterson*), for Ada Township.

*Varnum, Riddering, Schmidt & Howlett, LLP* (by *Teresa A. Decker*), for Norman Byrne and others.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary L. Hicks* and *Darrin F. Fowler*, Assistant Attorneys General, for State of Michigan and Department of State Police

*Honigman Miller Schwartz and Cohn* (by *John Pirich* and *Ann L. Andrews*), for Motorola Communications and Electronics, Inc.

Before: GRIFFIN, P.J., and WILDER and R. J. DANHOF*, JJ.

WILDER, J. In these consolidated appeals arising out of defendants' plans to construct a communications tower as part of the new Michigan Public Safety Communications System (hereafter MPSCS),[1] plaintiffs appeal as of right the trial court's grant of summary disposition to defendants under MCR 2.116(C)(10). We affirm.

### I. BASIC FACTS

In 1984, defendant Michigan Department of State Police (hereafter State Police) conducted a series of studies that identified serious problems with the existing State Police radio system. In order to address the public safety problems posed by the old radio system, the Legislature authorized construction of the MPSCS in the capital outlay appropriations acts of 1990 and 1993, and appropriated $2.85 million in general

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] After these appeals were filed and before oral argument, the construction of the tower at issue in this case was completed.

fund money to the State Police for construction of the new system. See 1990 PA 253; 1993 PA 19. After bidding was completed, the State Police selected intervening defendant Motorola Communications and Electronics, Inc., (hereafter Motorola) for final contract negotiations and, on December 8, 1994, Motorola was awarded a $187 million contract to design and implement the new MPSCS, an integrated radio tower network communications system.

When completed, the new system, comprised of approximately 181 towers constructed throughout the state of Michigan, will provide radio coverage over the entire state enabling state and local public safety officers, as well as law enforcement agencies and other state departments, to communicate with each other instantaneously. Pursuant to the contract, the State Police and Motorola executed a Detailed Design Plan of a four-phase construction project. In this regard, the State Police and Motorola selected a site in Ada Township in the vicinity of Honey Creek Avenue and Three Mile Road (hereafter Honey Creek site) for construction of a 475-foot radio communications tower, and they prepared to notify the local units of government affected by the project.

On August 12, 1997, the State Police and Motorola notified plaintiff Ada Township of their intention to construct the communications tower at the Honey Creek site. The notification advised Ada Township that within thirty days it must either issue a special use permit authorizing construction of the tower at the selected site or, if Ada Township opposed the site selected by the State Police, it must propose an alternative site that met "Equivalent Site Criteria" adopted by the State Police.

On September 10, 1997, the Ada Township Planning Commission held a special meeting at which it tabled a recommendation of an alternative site and approved a special use permit for the construction of the MPSCS radio tower on the Honey Creek site. The special use permit, however, limited the permissible height of the tower to 175 feet, applied setback and other restrictions contained in the township zoning ordinance, and incorporated height restrictions contained in the Kent County International Airport Zoning Ordinance.

On September 12, 1997, the State Police and Motorola similarly notified Kent County of its intention to construct a communications tower in Ada Township, and advised the county that it had thirty days to propose an equivalent site or grant a special use permit, if the county believed that the proposed tower did not comply with its zoning ordinance. Kent County neither proposed an alternative site nor issued a special use permit, and instead advised the State Police that it must apply for a permit to construct the tower.

In early December 1997, the State Police and Motorola notified Ada Township and Kent County of their intention to proceed with construction on the Honey Creek site and began pre-construction activity. Ada Township issued a stop-work order. Thereafter, Ada Township and the State Police reached an agreement under which the State Police would evaluate the feasibility of constructing the tower at the alternative site previously tabled by Ada Township. The agreement acknowledged that if third-party litigation ensued to challenge construction of the tower at the alternative site, the State Police would abandon the alternative site and return to the Honey Creek site.

In fact, on January 7, 1998, a group of citizens opposed to construction of the tower at the alternative site filed suit seeking to require the State Police to construct the tower at the Honey Creek site.[2] The State Police promptly abandoned the alternative site and commenced construction at the Honey Creek site.

Before construction, on December 12, 1997, the Federal Aviation Administration concluded that the proposed tower "would not be a hazard to air navigation." On January 13, 1998, the Michigan Bureau of Aeronautics, to whom airspace reviews and approvals had been delegated by the Michigan Aeronautics Commission, issued a "Tall Structure Permit" for the proposed tower, an indication that its study found the tower would pose "noninterference to air navigation."

## II. PROCEDURAL HISTORY

In Docket No. 210067, plaintiff Kent County Aeronautics Board (hereafter Kent County) filed its complaint against defendant State Police, seeking to enjoin construction of the communication tower as a violation of the height restrictions contained in the zoning ordinance. Kent County asserted in the complaint that the proposed tower would present a danger to aircraft and that therefore the State Police was required to apply for and obtain a dimensional variance. Defendant Motorola was permitted to intervene in the action filed by Kent County. In lieu of answers

---

[2] *McClain v Ada Twp*, Kent County Circuit Court Case No. 98-00176.

to the complaint, defendants filed motions for summary disposition arguing that the township zoning ordinance was preempted by subsection 2 of § 2 of the Radio Broadcasting Stations Act (hereafter RBSA), MCL 28.282(2); MSA 4.492(2), as amended by 1996 PA 538, and that the Tall Structure Permit issued by the state authorized the erection of the tower. Following a hearing on the motions, the trial court concluded that by enacting 1996 PA 538, the Legislature intended to exempt the State Police from local zoning ordinances in connection with construction of the MPSCS. Accordingly, the trial court granted summary disposition to defendants and dismissed Kent County's action with prejudice.

In Docket No. 210448, plaintiff Ada Township filed its complaint alleging that (1) 1996 PA 538 violated the due process provisions of the Michigan Constitution by inappropriately delegating legislative power to the State Police and was also unconstitutional because it failed to provide reasonably precise standards to guide the State Police in locating a new communication system, (2) defendants violated the Administrative Procedures Act (hereafter APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, because the "Equivalent Site Criteria" provided by the State Police were not promulgated pursuant to the rule-making procedures in the APA, and (3) construction of the communications tower on the Honey Creek site violated the conditions imposed in the township's special use permit.

Defendants filed motions for summary disposition, asserting that plaintiff lacked standing to raise a constitutional due process challenge to the statute and that, in any event, the standard articulated in the stat-

ute provided sufficient direction to the State Police. Defendants also argued that the rule-making procedures articulated in the APA were inapplicable to this case because the "Equivalent Site Criteria" used for determining whether an alternative site for construction was acceptable were not "rules" as defined by the APA. Finally, defendants maintained that because the State Police was not subject to the provisions set forth in the zoning ordinance, Ada Township could not preclude construction of the tower by incorporating similar restrictions in the special use permit.

After entertaining arguments on the motions, the trial court denied Ada Township's motion for a preliminary injunction and subsequently granted summary disposition to defendants. The trial court found that Ada Township lacked standing to raise the constitutional claims and that, in any event, the claims were not meritorious. The trial court also found that the "Equivalent Site Criteria" issued by the State Police are not "rules" within the meaning of the APA and therefore the APA was not implicated. The trial court further held that the special use permit issued by the township in this case, if allowed, would effectively nullify the provisions of 1996 PA 538 and, as such, was not a valid exercise of special use permitting authority under the statute as applied to construction of the tower.

In Docket No. 210852, several individual plaintiffs who owned property located immediately adjacent to or within a few hundred feet of the Honey Creek site filed suit against defendants, asserting claims identical to those alleged by Ada Township in Docket No. 210448. Plaintiffs also asserted claims that the proposed tower would constitute a nuisance and would

result in an inverse condemnation of plaintiffs' respective properties. The inverse condemnation count was dismissed without prejudice after plaintiffs conceded that the trial court lacked subject-matter jurisdiction over that claim. With regard to the remaining claims, the trial court granted summary disposition to defendants with regard to the nuisance claims, finding that the mere size of a building, alone, cannot constitute a physical intrusion or trespass, and dismissed the remainder of the complaint for the same reasons the township's complaint was dismissed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's grant of summary disposition pursuant to MCR 2.116(C)(10) de novo. *Paul v Lee*, 455 Mich 204, 210; 568 NW2d 510 (1997); *UAW-GM Human Resource Center v KSL Recreation Corp*, 228 Mich App 486, 490; 579 NW2d 411 (1998).

In addition, statutory interpretation is a question of law that is subject to review de novo on appeal. *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997).

## III. LEGAL ANALYSIS

### A. COMMON ISSUES

A central question in each of these cases is whether the State Police, as a state agency, is exempt from local zoning ordinances in connection with the construction of the MPSCS. We answer this question affirmatively and hold that the RBSA, MCL 28.281 *et seq.*; MSA 4.491 *et seq.*, as amended by 1996 PA 538,

exempts the State Police and Motorola from the applicability of the Kent County International Airport Zoning Ordinances in construction of the Honey Creek tower.

In addressing this question, we examine the language in the statute in an effort to discern the legislative intent. *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 663-664; 593 NW2d 534 (1999); *Dearden v Detroit*, 403 Mich 257, 264-265; 269 NW2d 139 (1978). In doing so, we are mindful of the general rules of statutory construction. The primary goal of judicial interpretation of statutes is to ascertain and effectuate the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). We apply a reasonable construction in consideration of the purpose of the statute and the object sought to be accomplished. *Id.*

The first criterion in determining legislative intent is the specific language of the statute. *State Defender Union Employees v Legal Aid & Defender Ass'n*, 230 Mich App 426, 431; 584 NW2d 359 (1998). The Legislature is presumed to have intended the meaning it plainly expressed. *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor appropriate. *State Defender, supra* at 431. However, if reasonable minds can differ regarding the meaning of a statute, or if a literal construction of a statute would produce unreasonable and unjust results inconsistent with the purpose of the statute, then judicial construction is appropriate. *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994).

Section 2 of the RBSA, MCL 28.282; MSA 4.492, as amended by 1996 PA 538, states in pertinent part:

> (1) The director of the department of state police and the director of the department of management and budget are responsible for the construction, implementation, operation and maintenance of the Michigan public safety communications system.
>
> (2) In siting the buildings and equipment necessary to implement the Michigan public safety communications system, the director of the department of state police shall locate the system, a local unit of government with zoning authority shall be notified of a site selected in their jurisdiction and the requirements necessary for a site. If the selected site does not comply with zoning, the local unit shall have 30 days from the date of notification to grant a special use permit or propose an equivalent site. If the local unit does not grant a special use permit within the 30 day period, or a proposed alternate site does not meet the siting requirements, the department may proceed with construction.

The clear import of the Legislature's enactment of 1996 PA 538, which by its terms grants the State Police responsibility for all matters concerning construction of the new MPSCS, was to exempt the State Police from local zoning ordinances so that the MPSCS could effectively and efficiently be constructed. The language in the statute demonstrates the Legislature's recognition that the nature of the construction, implementation, operation, and maintenance of the MPSCS "demands exclusive state regulation to achieve the uniformity necessary to serve the state's purpose." *Bingham Twp v RLTD Railroad Corp*, 228 Mich App 154, 157; 576 NW2d 731 (1998). Significantly, the language in 1996 PA 538 states that while the State Police must notify the local unit of government with

zoning authority of the site selected for the communications tower, the local governmental unit's authority to change the site or prevent construction is expressly limited to either granting a special use permit or suggesting an alternative site. If the local governmental unit does not grant a special use permit or provide an equivalent, alternative site within thirty days, the State Police may proceed with construction at the original proposed site despite any apparent zoning violations.

Indeed, the language in the statute "[*i*]*f the selected site does not comply with zoning*" (emphasis added) suggests that the Legislature expressly contemplated noncompliance with local zoning ordinances when amending the statute and chose to provide the local unit of government thirty days to propose an equivalent site or issue a special use permit as the only means of remedying or avoiding zoning violations. Given this explicit language, we reject the argument posed by all plaintiffs that the Legislature intended to allow the local unit of government to impede construction of the tower solely on the basis of alleged violations of the dimensional restrictions in the zoning ordinance. Instead, we read 1996 PA 538 as a clear expression of the Legislature's intent to vest the State Police with complete authority over construction of the communications tower, not subject to any other legislative act, including zoning ordinances. Indeed, if the State Police were subject to the provisions in the township zoning ordinances, the underlying purpose of the MPSCS could be effectively thwarted by local government entities imposing unreasonable restrictions to prohibit construction of the towers in

appropriate locations. A careful reading of 1996 PA 538 evinces a contrary legislative intent.

Finally, that the statute does not expressly vest "exclusive jurisdiction" of matters concerning the communications tower to the State Police is not dispositive. In *Burt Twp, supra* at 669, our Supreme Court clarified how to determine whether a state agency is subject to local zoning ordinances:

> While the presence of such terms as "exclusive jurisdiction" certainly would be indicative of a legislative intent to immunize the DNR from local zoning ordinances, we decline to require that the Legislature use any particular talismanic words to indicate its intent. The Legislature need only use terms that convey its clear intention that the grant of jurisdiction given is, in fact, exclusive. Whatever terms are actually employed by the Legislature, our task is to examine the various statutory provisions at issue and attempt to discern the legislative intent in enacting them.

Thus, despite the absence of specific language in the statute granting exclusive jurisdiction to the State Police with respect to construction of the MPSCS, we find that 1996 PA 538 clearly conveys the Legislature's intent to grant the State Police such authority.

Having concluded that 1996 PA 538 exempts the State Police and Motorola from the provisions of the township zoning ordinance in connection with construction of the MPSCS, we next examine plaintiffs' arguments raised in their individual lawsuits.

### B. KENT COUNTY

Kent County argues that the trial court erred in granting summary disposition to defendants because 1996 PA 538 does not entirely exempt defendants from all local zoning restrictions. While acknowledg-

ing that 1996 PA 538 exempts defendants from zoning restrictions that regulate the "use" of land in its zoning districts, Kent County contends that the statute does not exempt defendants from the dimensional provisions, particularly the height restrictions, in the zoning ordinance. We disagree.

Given the clear language of 1996 PA 538, we are not persuaded by Kent County's argument that 1996 PA 538 was only intended to preempt land use restrictions, not dimensional or height requirements, and we find no support for this interpretation in the record or the language of the statute. It is simply illogical to conclude that, while every other zoning regulation has been preempted, the Legislature did not intend to preempt the height requirements in the ordinance. Even assuming that there is a recognizable distinction between land use zoning restrictions and dimensional zoning restrictions, as proposed by Kent County, the Legislature is presumed to have had knowledge of such distinction when it enacted 1996 PA 538, yet, significantly, it chose not to distinguish between the restrictions when drafting the amended statute. Cf. *Capital Region Airport Authority v DeWitt Charter Twp*, 236 Mich App 576; 601 NW2d 141 (1999) (the legislative intent discerned from the Airport Authorities Act was to exempt the CRAA only from local zoning regulations for aeronautical uses, not for nonaeronautical uses, because neither the CRAA nor DeWitt Township has exclusive jurisdiction over airport lands). Accordingly, because we hold that 1996 PA 538 exempts the State Police and Motorola from all provisions in the township zoning ordinance in connection with the construction of the new MPSCS, the

trial court did not err in granting summary disposition to defendants.

Kent County also contends that even if 1996 PA 538 exempts defendants from the local zoning ordinance, Kent County is not a "local unit of government" within the meaning of 1996 PA 538 and, thus, it is not subject to the provisions of the statute. Kent County argues that the phrase "local unit of government" as used in 1996 PA 538 includes only a city, village or township, and does not include a county or airport. Thus, although Kent County concedes that the term "local unit of government" "often is intended to include counties within its scope[,]" it contends that such an interpretation is inappropriate for 1996 PA 538. We disagree.

1996 PA 538 expressly applies only to "a local unit of government with zoning authority." The phrase "local unit of government" is not defined in the RBSA, and thus, we accord this phrase its plain and ordinary meaning, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1); *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997). When a term or phrase is not defined in a statute, courts may consult dictionary definitions to determine the plain and ordinary meaning of a word. *In re Lee Estate*, 193 Mich App 586, 590; 484 NW2d 411 (1992). *The Random House College Dictionary* (rev ed, 1995), defines "county" as "a territorial division and unit of local government . . . ." Additionally, Black's Law Dictionary, (4th ed, 1968), defines "local government" as "the governmental authority of a municipal corporation, as a city or county, over its local and individual affairs . . . ." Article 7, § 29 of the Michigan Constitution

describes "local units of government" as "counties, townships, cities and villages." Finally, both federal and Michigan courts have defined the term "local units of government" to include counties. See *Northwest Airlines, Inc v County of Kent, Michigan*, 955 F2d 1054, 1057 (CA 6, 1992); *West v City of Portage*, 392 Mich 458, 463; 221 NW2d 303 (1974). Therefore, the trial court correctly concluded that Kent County International Airport is an agency of the county, and that Kent County is a "local unit of government with zoning authority" within the meaning of the statute.[3] See also *Codd v Wayne Co*, 210 Mich App 133, 135; 537 NW2d 453 (1995) (operation and maintenance of an airport by a political subdivision constitutes a governmental function).

Lastly, Kent County argues that the trial court erred in granting summary disposition to defendants because there is a genuine issue of material fact regarding whether the tower constituted a nuisance. Kent County's complaint did not allege a claim of nuisance and, thus, no evidence or documentation was presented to the trial court regarding this issue.[4] This

---

[3] In support of its position that the Kent County International Airport is not a "local unit of government," plaintiff relies on MCL 791.220e; MSA 28.2290(5), the Department of Corrections act, which places limitations on where a correctional facility may be located. However, subsection 20e(4) of that statute provides, "[a]s used in this section, 'local unit of government' means a city, village or township," clearly limiting its definition to the confines of that particular statute. As such, we find no basis for incorporating the definition contained in the Department of Corrections act into 1996 PA 538.

For similar reasons, we also reject Kent County's argument that § 1005 of 1992 PA 163 in the appropriations act provides authority for excluding counties from the definition of "local unit of government." The statutory language in the appropriations act has no bearing on the meaning of the phrase "local unit of government with zoning authority" in 1996 PA 538(2).

[4] Notably, at the summary disposition hearing, counsel for Kent County made the following remarks regarding the issues in this case:

Court's review is limited to the record developed by the trial court. MCR 7.210(A); *Wiand v Wiand*, 178 Mich App 137, 143; 443 NW2d 464 (1989). A party is not permitted to enlarge the record on appeal by asserting numerous facts that were not presented at the trial court. *Id.* Therefore, because Kent County's nuisance claim is not preserved for appellate review, we decline to consider the claim.

### C. ADA TOWNSHIP

Ada Township asserts that the trial court erred in holding as a matter of law that, as a political subdivision of the state, it lacked standing to challenge the constitutionality of 1996 PA 538. We disagree.

"[E]xcept as to certain express constitutional grants and limitations of power, local government units are only creatures of legislation" and they do not have standing to challenge the constitutionality of a statutory provision enacted by the Legislature. *DeWitt Twp v Clinton Co*, 113 Mich App 709, 716; 319 NW2d 2 (1982). In *DeWitt, id.* at 717, this Court quoted with approval the following language from the United States Supreme Court's opinion in *Williams v Mayor & City Council of Baltimore*, 289 US 36, 40; 53 S Ct 431; 77 L Ed 1015 (1933): " 'A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.' "

---

I agree with the State that there really are only three material facts . . .[a]nd those material facts, I agree, are that the airport was given notice under PA 538, that thirty days elapsed, and that neither a special use permit nor an alternative site was purchased [sic] by the airport for this project.

Relying on the above passage, the *DeWitt* Court, *supra* at 717, held: "We see no reason why a local governmental unit's assertion of equal protection and *due process rights* under our state constitution should lead to a different result [than that reached in *Williams*]." (emphasis added). See also *Oakland Co Bd of Co Rd Comm'rs v MPCGA*, 456 Mich 590, 607-610; 575 NW2d 751 (1998); *Kent Co v Dep't of Social Services*, 149 Mich App 749, 754; 386 NW2d 663 (1986); *Berrien Co v Michigan*, 136 Mich App 772, 778-779; 357 NW2d 764 (1984) (all dismissing equal protection and due process challenges asserted by the counties).

Therefore, contrary to Ada Township's contention that these cases do not preclude a constitutional challenge to the statute on "grounds other than equal protection," the clear import of these cases is that a constitutional due process challenge asserted by a subdivision of the state is precluded. Because Ada Township challenges the constitutionality of 1996 PA 538 on due process grounds,[5] see *Delta Co v Dep't of Natural Resources*, 118 Mich App 458, 464-465; 325 NW2d 455 (1982), the trial court properly concluded that Ada Township lacked standing to challenge the constitutionality of 1996 PA 538. *DeWitt, supra.*

---

[5] Citing the separation of powers provision, Const 1963, art 3, § 2, and the Due Process Clause, Const 1963, art 1, § 17, Ada Township claims that 1996 PA 538 fails to provide reasonably precise standards for guiding the State Police in locating a new communications system, fails to provide reasonably precise standards to the township for proposing an alternative site, fails to define siting requirements, fails to authorize the State Police to promulgate rules defining the siting requirements, and grants the State Police arbitrary power to locate the system and accept or reject a proposed alternative site.

Next, Ada Township argues that the trial court erred in holding that the "Equivalent Site Criteria" promulgated by the State Police were not "rules" subject to the rule-making requirements of the APA. We disagree.

Section 7 of the APA, MCL 24.207; MSA 3.560(107), provides in pertinent part:

> "Rule" means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency. Rule does not include any of the following:
>
> *          *          *
>
> (g) An intergovernmental, interagency, or intra-agency memorandum, directive, or communication that does not affect the rights of, or procedures and practices available to, the public.
>
> (h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory.

"The label an agency gives to a directive is not determinative of whether it is a rule or a guideline under the APA." *AFSCME v Dep't of Mental Health*, 452 Mich 1, 9; 550 NW2d 190 (1996). Instead, courts must examine the "actual action undertaken by the directive, to see whether the policy being implemented has the effect of being a rule." *Id.* "[A]n agency may not circumvent APA procedural requirements by adopting a guideline in lieu of a rule." *Id.*

After an independent review of the record, we agree with the trial court that the APA was not impli-

cated in this case because the "Equivalent Site Criteria" adopted by the State Police was not a "rule" as defined in the APA, but was simply an intergovernmental communication that does not affect the rights of the public. The "Equivalent Site Criteria" is analogous to a set of instructions intended to guide Ada Township in proposing an equivalent, alternative site for construction. As the trial court correctly noted, the criteria do not create any legal obligation on behalf of the township to propose a site, nor do they enlarge, abridge, or in any way affect the rights of the public. The criteria simply advise a local governmental unit, by way of explanation, what will constitute an equivalent site for construction of a communications tower. The construction of the radio tower involved communications between two governmental agencies that did not affect the public's rights, or the procedures and practices available to the public. Indeed, the public does not have a right to propose an alternative site for construction; the statute grants only the local unit of government this right. Moreover, contrary to plaintiff's contention, individual citizens' property rights do not equate to "public rights." See *Spiek v Dep't of Transportation*, 456 Mich 331, 341-342; 572 NW2d 201 (1998).

Further, the "Equivalent Site Criteria" are not "rules" because they do not have the force and effect of law and do not require compliance with any stipulations or requirements. *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 233-234; 501 NW2d 88 (1993). Cf. *AFSCME, supra* at 9-10; *Delta Co, supra* at 467-468. No sanctions are imposed on Ada Township for failing to propose an equivalent, alternative site; rather, the State Police is simply entitled to proceed with

construction on the originally proposed site. In this regard, the "Equivalent Site Criteria" are analogous to agency correspondences or bound manuals that set forth guidelines for operation. See *Greenfield Constr Co, Inc v Dep't of State Hwys*, 402 Mich 172, 190-191; 261 NW2d 718 (1978).

The Legislature did not empower the State Police to promulgate rules. *Clonlara, supra* at 246. 1996 PA 538 authorizes the State Police to notify the local unit of government with zoning authority and provide it with "the requirements necessary for a site" so that, knowing what is required, the local unit of government may decide whether to grant a special use permit or propose an equivalent, alternative site. Accordingly, we find that the trial court correctly held that the "Equivalent Site Criteria" set forth the siting requirements for a communications tower but do not have the force and effect of law, do not affect public rights, and are merely explanatory, interpretive statements and are not "rules" as defined by the APA.

Lastly, Ada Township argues that the trial court abused its discretion in denying its motion for a preliminary injunction because an injunction provided the only means to preserve the status quo pending resolution of this matter. Since the filing of this appeal, the communications tower located in Ada Township has been constructed, and therefore, this issue is moot. Where the act that is sought to be enjoined has already been performed, an appeal is moot. *Cohan v Riverside Park Place Condominium Ass'n, Inc (After Remand)*, 140 Mich App 564, 567; 365 NW2d 201 (1985).

C. BYRNE

Plaintiffs argue that the trial court erred in granting summary disposition to defendants because 1996 PA 538 violated local zoning regulations that were set forth in a special use permit granted to defendants, and that the "Equivalent Site Criteria" developed by the State Police violate the APA. Because we have already concluded that the State Police is exempt from local zoning ordinances affecting construction of the MPSCS under 1996 PA 538, and that the "Equivalent Site Criteria" do not implicate the rulemaking procedures in the APA, we need not review these issues further.

Plaintiffs also allege that construction of the communications tower on the selected site in violation of local zoning regulations constitutes a nuisance per se under MCL 125.294; MSA 5.2963(24). Plaintiffs further allege that the tower would "significantly decrease the value" of their properties and would create an "overwhelming presence in the neighborhood and associated noise, traffic and other activity, would interfere with plaintiffs' use and enjoyment of their properties" such that the tower is "akin to a physical invasion of [their] property" under a trespass-nuisance theory. We disagree.

First, while plaintiffs correctly note that under MCL 125.294; MSA 5.2963(24), § 24 of the Township Zoning Act (hereafter TZA), MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, "[a] use of land . . . in violation of a local ordinance or regulation adopted pursuant to this act is a nuisance per se," because we have already concluded that under 1996 PA 538 the State Police is exempt from local zoning ordinances in connection

with construction of the communications tower, we reject plaintiffs' nuisance per se claim on this basis.

Second, we conclude that plaintiffs' trespass-nuisance claim is barred by governmental immunity under MCL 691.1407(1); MSA 3.996(107)(1), which provides in pertinent part:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function.

See *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984). A governmental function is defined as "an activity . . . expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(f); MSA 3.996(101)(f). Here, the construction of the communications tower by the State Police and Motorola was authorized by statute, MCL 28.282(2); MSA 4.492(2), as amended by 1996 PA 538, and clearly constituted a governmental function. Because we are not persuaded that any of the recognized exceptions to governmental immunity for nuisance claims apply to this case, plaintiffs' claim must fail.[6]

---

[6] The Supreme Court has declared that neither intentional nuisance, *Li v Feldt (After Remand)*, 434 Mich 584, 595; 456 NW2d 55 (1990), nor public nuisance, *Li v Feldt (After Second Remand)*, 439 Mich 457, 462, 474; 487 NW2d 127 (1992), are recognized exceptions to governmental immunity. The only recognized nuisance exception to governmental immunity is trespass-nuisance, which is defined as "a direct trespass upon, or the interference with the use or enjoyment of, land that results from a physical intrusion caused by, or under the control of, a governmental entity." *Fox v Ogemaw Co*, 208 Mich App 697, 698-699; 528 NW2d 210 (1995). Plaintiffs failed to establish a trespass-nuisance claim because there has been no invasion of plaintiffs' properties. *Id.* The fact that their properties may decrease in value because of the construction of the tower is insuffi-

Plaintiffs next argue that 1996 PA 538 is an unconstitutional and improper delegation of legislative power because the statute lacks precise standards limiting the discretion of the State Police in selecting a construction site, accepting or rejecting an alternative site, and deciding what conditions may be contained in a special use permit. We disagree and conclude that 1996 PA 538 is a constitutionally valid delegation of power to the State Police.

The Supreme Court has enunciated a three-part test for determining whether a legislative delegation of power is valid: (1) the act must be read as a whole, (2) the act carries a presumption of constitutionality, and (3) the standards must be as reasonably precise as the subject matter requires or permits. *Blue Cross & Blue Shield of Michigan v Governor*, 422 Mich 1, 51; 367 NW2d 1 (1985); *Dep't of Natural Resources v Seaman*, 396 Mich 299, 309; 240 NW2d 206 (1976). The preciseness required of the standards will depend on the complexity of the subject matter at issue. *Blue Cross, supra* at 51. These guidelines are used to evaluate a statute "to ensure against excessive delegation and misuse of delegated power." *Id.* at 52.

In this case, 1996 PA 538 provides that the director of the State Police Department shall locate the system at a site "necessary to implement the Michigan public safety communications system" and notify local units of government of the site selected and "the requirements necessary for a site." Plaintiffs' claim that "necessity," as interpreted by defendants and the trial court, provides uninhibited authority to defend-

cient to constitute a nuisance. *Plassey v S Loewenstein & Son*, 330 Mich 525, 530; 48 NW2d 126 (1951); *Adkins v Thomas Solvent Co*, 440 Mich 293, 311; 487 NW2d 715 (1992).

ants and constitutes excessive delegation of power. In *State Hwy Comm v Vanderkloot*, 392 Mich 159, 170; 220 NW2d 416 (1974), the Supreme Court analyzed the "necessity" standard contained in MCL 213.368; MSA 8.261(8) of the highway condemnation act and concluded that the "necessity" standard set forth in that act was sufficient "to satisfy the demands of due process with respect to delegation of legislative authority." The Court explained that standards prescribed for guidance need only be " 'as reasonably precise as the subject matter requires or permits.' " *Id.* at 173, quoting *Osius v St Clair Shores*, 344 Mich 693, 698; 75 NW2d 25 (1956).

Contrary to plaintiffs' contention, 1996 PA 538 does not permit the State Police to arbitrarily place communications towers around the state. The detailed mapping system executed by defendants provides defined areas that guide the State Police in determining appropriate locations for the towers. The Legislature was well aware of the mapping system at the time 1996 PA 538 was enacted, and since the MPSCS consists of over 180 towers around the state, we concur with the trial court's finding that it was neither practical nor feasible for the Legislature to designate specific locations for the tower, or for the statute to be more precise. In order for the communications system to operate in an effective and unified manner, the director must be afforded considerable flexibility in locating appropriate areas for the towers and purchasing land. See *Seaman, supra* at 309.

Therefore, reading the act as a whole, and affording the statute a presumption of constitutionality, we conclude that the standard set forth in 1996 PA 538 is "as reasonably precise as the subject matter requires

or permits." *Blue Cross, supra* at 51. Accordingly, the trial court properly ruled that 1996 PA 538 was a valid, constitutional delegation of legislative authority, and summary disposition was appropriate.

Affirmed.