*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MIDWEST VALVE & FITTING COMPANY, and all others similarly situated,

UNPUBLISHED
March 9, 2023

Plaintiff-Appellant,

v

No. 358868
Wayne Circuit Court
LC No. 18-014337-CZ

CITY OF DETROIT,

Defendant-Appellee.

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff-appellant, Midwest Valve & Fitting Company, appeals as of right the trial court's order that, after a bench trial, dismissed its remaining claims related to the legality of certain fees charged by defendant, City of Detroit. The appeal also involves the trial court's earlier opinion and order granting summary disposition in favor of defendant on appellant's other claims.

This case involves appellant's challenge to the legality of certain annual charges that are imposed by defendant. The trial court determined that the charges are legal and dismissed appellant's claims, some in a pretrial motion for summary disposition and the remainder after a bench trial. Because its arguments have no merit, we affirm.

## I. FACTS

Defendant imposes an annual charge on owners of commercial real property and multiunit residential real property located in Detroit. Although appellant initially claimed that the charges were "fire inspection charges," appellant on appeal has acquiesced to the trial court's and defendant's position that they are "permit fees."

Appellant received bills from defendant for these charges since at least 2013 and paid them. However, appellant maintained that it never received any fire safety inspection during this time.

Appellant filed a complaint, alleging numerous claims against defendant: Count I—violation of the Headlee Amendment, Count II—assumpsit/unreasonable charges, Count III—

unjust enrichment/unreasonable charges, Count IV—assumpsit/violation of MCL 141.91, Count V—unjust enrichment/violation of MCL 141.91, Count VI—assumpsit/violation of city ordinance, Count VII—unjust enrichment/violation of city ordinance, and Count VIII—violation of equal protection.

Appellant moved for summary disposition under MCR 2.116(C)(10) on Counts I, IV, and V. It argued that the charges constituted taxes, which were imposed in violation of § 31 of the Headlee Amendment[1] and MCL 141.91.[2] After analyzing the characteristics of the charges, the trial court ruled that the charges were fees, not taxes, and granted summary disposition in favor of defendant on Counts I, IV, and V.

The trial court conducted a one-day bench trial on the remaining counts. In support of its position that the charges at issue were inspection fees, appellant primarily relied on (1) a fire marshal web page indicating that inspections get scheduled after payment of the fee, and (2) some internal city documents[3] that used terminology, such as "safety inspection charges" or "fire permit safety inspection," while referencing these charges. But, Fire Marshal Shawn Battle testified that those representations were factually incorrect because the fees were exclusively for permits, which allow businesses to operate, and have no relation to inspections.[4] Although it was the department's goal to inspect every commercial property every year, Battle stated this was not feasible because of a lack of manpower. Battle also testified that his department did not utilize any of the documents appellant relied on and instead it used a system called MobileEyes, which identifies the charges as being for "permits." Further, the actual invoices and permits relating to these charges were admitted into evidence via stipulation. Those documents specifically reference "industrial/business/mercantile occupancy permit[s]," with no mention of inspections.

Although defendant was unable to verify that the city council had approved the charges any time before May 2021, the council later approved them retroactively back to 2013.

In its closing argument, appellant argued that even if the charges were "permit fees," they would be illegal because the city council never approved them, which was required by the city charter and ordinances. Appellant claimed that the city council's attempt to retroactively approve the charges was a legal nullity. Regarding its equal-protection claim, appellant argued that, with

---

[1] Const 1963, art 9, § 31.

[2] As will be discussed in greater detail below, § 31 of the Headlee Amendment "prohibits units of local government from levying any new tax or increasing any existing tax above authorized rates without the approval of the unit's electorate," *Durant v Mich*, 456 Mich 175, 183; 566 NW2d 272 (1997), and MCL 141.91 prohibits cities from imposing taxes other than ad valorem property taxes.

[3] The parties stipulated that these documents were created by an unknown city employee at some unknown time.

[4] Battle also testified that 10 months before trial started, someone had put in a request to Detroit's Information Technology Department to have that information removed from the website, but apparently, the information was still present as of a few days before trial.

it not receiving any inspections, as opposed to other commercial property owners, it had not been treated objectively and reasonably.

The trial court found that the charges at issue are annual permit fees and not inspection fees. The trial court also noted that the burden was on appellant to prove that any fee or charge was unreasonable or otherwise unlawful. Further, the trial court ruled that Counts II and VI were not viable because Michigan does not recognize an independent cause of action for assumpsit.

The trial court dismissed appellant's unjust enrichment claims in Counts III and VII. The court noted that Count III was premised on the allegation that the charges were for fire inspections when no inspections had taken place. The trial court rejected this claim because the charges are not for inspections, but are for permits. The trial court also ruled two additional arguments appellant raised relating to the claims of unjust enrichment were unpersuasive. First, the trial court rejected appellant's contention that the charges were in violation of the city ordinance because they were in excess of the cost of the "issuance" of permits. The trial court noted that cities are allowed to recover all of their direct and indirect costs related to the regulation of those who are charged the fee and that courts are to give deference to a city's interpretation of its own ordinances. Second, the court rejected appellant's contention that defendant was unjustly enriched because the charges were never approved by the city council. The trial court then ruled that the city council's retroactive approval of the charges was permissible as a matter of law.

Finally, the trial court ruled that appellant failed to prove any of the essential elements of its equal-protection claim, including that defendant made a classification identifying a particular group, that defendant intentionally or purposefully treated that group differently from similarly situated individuals, and that there is no rational basis for defendant's disparate treatment.

## II. HEADLEE AMENDMENT AND MCL 141.91

Appellant argues that the trial court erred when it granted summary disposition in favor of defendant on Counts I, IV, and V of its complaint. We disagree.

Whether a municipal charge is a "tax" is a question of law, which this Court reviews de novo. *Mapleview Estates, Inc v Brown City*, 258 Mich App 412, 413-414; 671 NW2d 572 (2003). This Court also reviews a trial court's decision on a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A motion under (C)(10) is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

In Counts I, IV, and V, appellant alleges violations of § 31 of the Headlee Amendment and MCL 141.91. Section 31 of the Headlee Amendment states, in pertinent part:

> Units of Local Government are hereby prohibited from levying any *tax* not authorized by law or charter when this section is ratified, without the approval of a

majority of the qualified electors of that unit of Local Government voting thereon. [Const 1963, art 9, § 31 (emphasis added).]

This section "prohibits units of local government from levying any new tax or increasing any existing tax above authorized rates without the approval of the unit's electorate." *Durant v Mich*, 456 Mich 175, 183; 566 NW2d 272 (1997).

MCL 141.91 states:

Except as otherwise provided by law and notwithstanding any provision of its charter, a city or village shall not impose, levy or collect a *tax*, other than an ad valorem property tax, on any subject of taxation, unless the tax was being imposed by the city or village on January 1, 1964. [Emphasis added.]

In concert, these provisions restrain a local government's ability to assess taxes. If the charges levied are not taxes, the Headlee Amendment is not implicated and appellant's claims here, based on violations of the Headlee Amendment and MCL 141.91, would necessarily fail. See *Bolt v City of Lansing*, 459 Mich 152, 158-159; 587 NW2d 264 (1998) (stating that user fees are not taxes and are not affected by the Headlee Amendment).[5]

"There is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment." *Id*. at 160. Three primary factors are considered in determining whether a charge is a fee or a tax. "The first criterion is that a user fee must serve a regulatory purpose rather than a revenue-raising purpose." *Id*. at 161. "A second, and related, criterion is that user fees must be proportionate to the necessary costs of the service." *Id*. at 161-162. A third criterion is voluntariness: fees generally are voluntary, while taxes are not. *Id*. at 162. "[T]hese criteria are not to be considered in isolation, but rather in their totality, such that a weakness in one area would not necessarily mandate a finding that the charge is not a fee." *Graham v Kochville Twp*, 236 Mich App 141, 151; 599 NW2d 793 (1999).

There is no question of fact that the charges at issue here were for the acquisition of permits, not inspections. Although appellant took the position below that the charges were "fire inspection charges" or "fire inspection fees," it submitted no evidence to show that the charges were paid in consideration for receiving an inspection. Instead, the evidence showed that the charges were for obtaining occupancy permits. Thus, appellant's arguments that rely on the charges being fees for receiving inspection services are misplaced and are without merit.

Considering the first *Bolt* factor, whether the charge serves a regulatory purpose rather than a revenue-raising purpose, it is understood that a fee can raise money as long as it is in support of the underlying purpose. *Merrilli v St Clair Shores*, 355 Mich 575, 583; 96 NW2d 144 (1959). Indeed, in *Merrilli*, our Supreme Court held that permit fees, as opposed to taxes, are regulatory in nature. *Id*. at 582. Fire Marshal Battle testified in his deposition that the charge at issue provides

---

[5] Although *Bolt* only concerned whether a particular charge was a "tax" for the purposes of the Headlee Amendment, we find it equally relevant for determining whether a particular charge is a "tax" for the purposes of MCL 141.91 as well.

the property owner with a permit, which allows the owner to operate in Detroit. Further, in a response to appellant's third set of interrogatories, defendant averred that those who pay the charge, and who do not receive an inspection, still receive the benefit of defendant's Fire Protection Program, which includes the "training of [the fire marshal] staff, maintenance of Fire Marshal's physical facility, public education, provision of information related to properties subject to the Fire Marshal's programs, maintenance of information, capacity to continue provision of services, including but not limited to inspections, etc."

Appellant argues that the Fire Protection Program serves a public purpose, but ignores the primary benefit to a property owner who pays the charge—a permit, allowing the owner to operate on its premises. Undoubtedly, the public also benefits from the Fire Protection Program, but as this Court recognized in *Westlake Trans, Inc v Pub Serv Comm*, 255 Mich App 589, 613; 662 NW2d 784 (2003), fees that benefit the general public still can maintain their regulatory nature.

In *Westlake*, the plaintiffs argued, in part, that fees assessed to trucking companies were an impermissible tax. *Id*. at 611. This Court stated:

> [I]n exchange for the fees, a motor carrier receives the right to operate its trucks in Michigan, and the fees are used to enforce the provisions of the act that carry out the above-listed purposes. Thus, there is a direct benefit to the one who pays the fees. We recognize that promoting and regulating safe use of the highways benefits the general public as well. However, a regulatory fee can have dual purposes and still maintain its regulatory characterization. As long as the primary purpose of a fee is regulatory in nature, the fee can also raise money provided that it is in support of the underlying regulatory purpose, and use benefit the general public. [*Id*. at 613 (citation omitted).]

The situation in *Westlake* is analogous to the circumstances before us. Like the plaintiffs in *Westlake*, who received the right to operate trucks in Michigan, appellant in the instant case receives a benefit by being allowed to operate its business in Detroit. Thus, appellant received "a direct benefit" from paying the charge. The fact that the general public also benefits from the Fire Protection Program does not negate the charge's regulatory nature. See also *Jackson Co v City of Jackson*, 302 Mich App 90, 108; 836 NW2d 903 (2013) ("[A] regulatory fee may confer a benefit on both the general public and the particular individuals who pay the fee and still maintain its regulatory character . . . ."). Therefore, the first of the factors we must consider weighs in favor of the charge being a fee and not a tax.

Secondly, the city's charge appears to be proportionate to the necessary costs of the service it is providing. Courts are to presume that the amount of the fee is reasonable. *Id.* at 109. Appellant's position is that the costs are not proportionate because, by not receiving any inspections, appellant received nothing different from anyone else in the city who was not required to pay the charges. We disagree with this argument because the main benefit of the city's charge was the receipt of a permit, not an inspection. Thus, those who paid the charge did receive a benefit distinct from someone who did not pay the fee—the right to occupy the premises as a business. Furthermore, these charges funded the year-to-year operations of the Fire Marshal Department. This is an important distinction from *Bolt*, in which our Supreme Court noted that the purpose of the charge, which it found to be a tax, was to finance a multiyear construction of a large

infrastructure project. There, the benefit gained—new infrastructure—would substantially outlast the time period for which the charge was to be in place. *Bolt*, 459 Mich at 163-164. Further, the amounts collected from the charges in the case before us historically were significantly less than the program's costs. Consequently, the charge is reasonably proportional.

As to the third factor, we must consider whether the city's charge was voluntary. The trial court did not explicitly rule on this factor and instead simply assumed that the charge was not voluntary. We agree that the charge was not voluntary. Although, while technically, the charge is voluntary because a business could decline to pay and simply opt to not operate in Detroit, that option is highly impractical for a business. Indeed, our Supreme Court in *Bolt* rejected the argument that a charge was voluntary because property owners could relinquish their rights of ownership. *Id.* at 168.

After weighing these same factors, the trial court ruled the charge was a fee, not a tax. We agree with the trial court's analysis and find it did not err. Significantly, this Court has recognized that "the lack of volition does not render the charge a tax, particular where the other criteria indicate the challenged charge is a user fee and not a tax." *Wheeler v Shelby Twp*, 265 Mich App 657, 666; 697 NW2d 180 (2005). Thus, even with the charge at issue being involuntary, that fact alone is not sufficient to overcome the other two factors that appellant received a benefit and that the fee is proportional.

Because the charge at issue is a fee, not a tax, appellant is precluded from succeeding on its claims alleging violations of the Headlee Amendment and MCL 141.91. As a result, the trial court properly granted summary disposition in favor of defendant on Counts I, IV, and V.

III. VIOLATION OF CITY CHARTER AND ORDINANCES

Appellant argues that the trial court erred by finding no cause of action for its claims related to the violation of the city charter and ordinances. We disagree.

A trial court's findings of fact in a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id.* A trial court's interpretation of a municipal charter is a question of law that this Court reviews de novo. *Save Our Downtown v Traverse City*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359536); slip op at 5.

Initially, it should be recognized that after the trial court's grant of summary disposition in favor of defendant on some of appellant's counts, trial proceeded with respect to only Counts II, III, VI, VII, and VIII. The trial court dismissed Counts II and VI, which alleges independent causes of action of assumpsit. This was not erroneous because Michigan no longer recognizes an

independent cause of action for assumpsit.[6] *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 564; 837 NW2d 244 (2013). Notably, appellant does not challenge the dismissal of those counts. Instead, appellant focuses on its allegations that the charges were unlawful because they were imposed in violation of the city charter and ordinances. Thus, only appellant's claims pertaining to the alleged violations of the city charter and ordinances are before this Court.[7]

In Count VII, appellant asserted a claim of unjust enrichment premised on a violation of Detroit Ordinances, § 19-1-22, Subsection 1.4.11, which stated at the time, in pertinent part:[8]

> In accordance with Section 9-507 of the 1997 Detroit City Charter, the Fire Commissioner is authorized to establish necessary fees, with the approval of the City Council, for the cost of:
>
> > (1) Inspection and consultation;
> >
> > (2) Issuance of permits and certificates;
> >
> > (3) Administrative appeals;
> >
> > (4) Issuance of reports; and
> >
> > (5) Copying of records.

Appellant alleges in its complaint that this ordinance was violated because the charges could not be considered "necessary" when a property owner does not receive a fire inspection. This position again is premised on the assertion that the charges were paid in consideration for

---

[6] Although no independent cause of action for assumpsit exists, "the substantive remedies traditionally available under assumpsit were preserved." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 564; 837 NW2d 244 (2013). In this instance, appellant's counts of assumpsit essentially were covered by its claims of unjust enrichment.

[7] In Count III, appellant alleges that defendant unjustly enriched itself by collecting charges pertaining to fire inspections, while not providing such fire inspections. However, the trial court found that the charges at issue were fees for permits, not inspections. That finding, precluding unjust enrichment, is not clearly erroneous. Fire Marshal Battle testified at trial that the fees were for the issuance of permits, not inspections. Indeed, even the invoices that appellant received stated that the charges were for "permits," with no mention of "inspections." While there were some internal city documents that used terms such as "fire inspection fee," those documents could not be authenticated, and the trial court gave them little to no weight. The author of those documents is not known, and there is no evidence that defendant relied on them. Accordingly, the trial court did not err by finding no cause of action for that aspect of Count III.

[8] The Detroit City Code was later recodified in December 2019. The content in this quoted portion was moved to Detroit Ordinances, § 18-1-22, Subsection 1.6.2. Although there are some minor modifications to the 2019 recodification, the content is substantially the same.

receiving fire inspections, but as already explained, that is not the case. The charges are a fee paid to obtain occupancy permits.

Although appellant's complaint only alleges that the ordinances were violated in this one respect in its proposed conclusions of law, appellant asserted that the charges were unlawful for two other reasons: (1) the city council never approved the charges, and (2) the charter provision cited in the ordinance does not allow for permit fees. The trial court rejected the former argument, but did not address the latter.

Regarding the former, the parties stipulated that there was no evidence of the city council approving the charges any time before May 2021. But the city council later retroactively approved the charges. Appellant argues that the retroactive approval is a nullity.

There is no per se prohibition on retroactive application of legislation. See *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Bd of Trustees v City of Pontiac (On Remand)*, 317 Mich App 570, 578-579; 895 NW2d 206 (2016). However,

> retrospective application of a law is improper where the law takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. [*In re Certified Questions from the United States Court of Appeals for the Sixth Circuit*, 416 Mich 558, 572; 331 NW2d 456 (1982) (quotation marks and citation omitted); see also *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 39; 852 NW2d 78 (2014).]

Appellant essentially argues that it had a vested right to not pay any of the charges until the city council approved them in May 2021. According to appellant, the retroactive imposition of those charges affected its vested right. Appellant's position is not persuasive. "Retroactive statutes curing defects in acts done, or authorizing or confirming the exercise of powers, are valid where the legislature originally had authority to confer the power or authorize the acts, except where it is attempted to impair vested rights." *Stott v Stott Realty Co*, 288 Mich 35, 45; 284 NW 635 (1939). As discussed below, the city council at all relevant times had the power or authority to approve the charges, making its retroactive authorization permissible. Notably, appellant during the preceding years thought that the charges were legally due and paid them to defendant. This is significant because the reason vested rights are not to be affected by retroactive legislation is that "it can deprive citizens of legitimate expectations and upset settled transactions." *LaFontaine*, 496 Mich at 38 (quotation marks and citations omitted). Because appellant had no expectation to be free from paying the permit fee, the retroactive authorization of that very same permit fee did not affect appellant. In other words, the retroactive imposition of the charge did not affect appellant as it incurred no new obligations to defendant after the passing of the resolution.

Additionally, a retroactive application must be a rational means of achieving a city's legitimate objective. *Downriver Plaza Group v Southgate*, 444 Mich 656, 667; 513 NW2d 807 (1994). In this case, the retroactive ratification of the charges was a rational means to further a legitimate legislative purpose. The purpose was to maintain the Fire Protection Program, which

-8-

certainly is a legitimate purpose, and the means to accomplish that was to simply authorize charges that property owners had already paid, which was reasonable.[9]

Appellant's latter argument not contained in its complaint was that the city council lacked the authority to approve the charges because they violate § 9-507 of the city charter. Section 9-507 provides:

> Any agency of the City may, with the approval of the City Council, charge an admission or service fee to any facility operated, or for any service provided, by an agency. The approval of the City Council shall also be required for any change in any such admission or service fee.

This section allows for the imposition of a charge for (1) admission to an agency-operated facility or (2) a service provided by a city agency. Only the second clause is pertinent in this case. While appellant concedes that if the charge was for a fire inspection, then the charge would be for a service, it argues that if the charge is truly a "permit fee," then it is not a charge for a service. We disagree.

The city charter is to be interpreted according to the rules of statutory construction. *Save Our Downtown*, ___ Mich App at ___; slip op at 5. "The provisions are to be read in context, with the plain and ordinary meaning given to every word. Judicial construction is not permitted when the language is clear and unambiguous. Court apply unambiguous statutes as written." *Id*. (quotation marks and citation omitted). When a term is not defined in a statute, courts may consult dictionary definitions to determine the plain and ordinary meaning of the term. *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 578; 609 NW2d 593 (2000). As evidenced by the 27 different definitions of the noun "service" in the dictionary, the term is defined broadly. See *Random House Webster's College Dictionary* (1995). However, one of those definitions is most pertinent: "the duty or work of public servants." *Id*. Although the work provided in this instance is not the provision of a fire inspection, it nonetheless still is a service because it is providing a permit. Consequently, the city's imposition of a charge to a property owner to obtain a permit does not run afoul of the city charter.

Appellant also contends that it is improper for the charges to fund "all of the direct and indirect costs" of the Fire Prevention Program. Appellant avers that the ordinance only allows for defendant to recover the administrative costs associated with issuing the permits. Appellant provides no authority for this argument and merely quotes the applicable provision in the city code: "the Fire Commissioner is authorized to establish necessary fees, with the approval of the City Council, for the cost of . . . [i]ssuance of permits and certificates." Detroit Ordinances, § 19-1-22, Subsection 1.4.11. Appellant focuses on the word "issuance" for its position. "Issuance" is defined as "the act of publishing or officially giving out or making available." *Merriam-Webster's Collegiate Dictionary* (11th ed).

---

[9] The only reason the charges had not been authorized earlier is that the Fire Marshal Department had thought that an authorization already was in place.

The strictly literal interpretation of this provision lends support to the suggestion that a charge is allowable only for the "act" of "giving out" the permit. However, the concept of a "permit" encompasses much more than a physical piece of paper. The more reasonable interpretation is that the cost of the issuance of a permit includes all the work involved with a particular program which that permit represents.

When interpreting an ordinance, courts are to give some deference to a municipality's interpretation. See *Macenas v Village of Michiana*, 433 Mich 380, 398; 446 NW2d 102 (1989). Battle testified that the Fire Marshal Department has been issuing the permit in the same manner since at least 1996, and that it would not be possible to issue these permits if all of the Fire Marshal's related programs were not funded.[10] Thus, the Fire Marshal Department has been interpreting the term "issuance" within the ordinance as encompassing the costs of the Fire Prevention Program, as well as the cost of physically issuing the permit itself. We defer to the Fire Marshal's interpretation of the ordinance and similarly conclude that the ordinance allows for the recovery of the costs of the Fire Prevention Program in the issuance of the permits.

Therefore, given the above analysis, we hold that the trial court did not err by finding no cause of action on appellant's claims related to any alleged violations of city charter or ordinances.

IV.  EQUAL PROTECTION

Appellant also argues that the trial court erred by finding no cause of action for its equal-protection claim. We disagree.

A trial court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. *Walters*, 239 Mich App at 456.

"The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law." *Shepherd Montessori Ctr Milan v Ann Arbor Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010), citing Const 1963, art 1, § 2 and US Const, Am XIV. "Michigan's equal protection provision is coextensive with the Equal Protection Clause of the federal constitution." *Grimes v Van Hook-Williams*, 302 Mich App 521, 532-533; 839 NW2d 237 (2013) (cleaned up). "The essence of the Equal Protection Clauses is that government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment." *Id*. at 533 (quotation marks and citation omitted). Thus, the relevant inquiry is whether there has been discriminatory intent or purposeful discrimination. *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 308; 553 NW2d 377 (1996).

Appellant claims that its "group" has been discriminated against because it did not receive fire inspections, while others who paid the charges at issue did. Because no suspect classification is involved, such as race, national origin, ethnicity, gender, or illegitimacy, the proper level of review is rational basis. See *Phillips v Mirac, Inc*, 470 Mich 415, 434; 685 NW2d 174 (2004).

---

[10] These also are findings of fact that the trial court made, which appellant does not challenge on appeal.

"The rational basis test considers whether the classification itself is rationally related to a legitimate governmental interest." *Id.* (quotation marks and citations omitted).

Fire Marshal Battle testified that the goal of his department is to inspect every property, but that the lack of funding and manpower makes it impossible to do so. Thus, while some properties in a given year received inspections, some did not, even though both inspected and uninspected properties pay the same charge. It is beyond dispute that a legitimate governmental interest is to provide fire inspections. It also is rationally related to only perform as many inspections as is economically feasible. Knowing that it is impossible to inspect every property, defendant was left with two choices: (1) conduct as many inspections as it could, or (2) conduct zero inspections so everyone was treated equally. Defendant's choice to proceed with the first option is eminently rational.

Therefore, the trial court did not err by finding no cause of action for appellant's equal-protection claim.

## V. CONCLUSION

The trial court correctly ruled in favor of defendant on all counts. We affirm.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan