*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELHAM MA AMAWI, also known as JULIANNE
WINSTON,

        Plaintiff-Appellant,

v

STEVEN ALAN DEMING,

        Defendant-Appellee.

UNPUBLISHED
July 20, 2023

No. 362538
Berrien Circuit Court
LC No. 2014-003582-DP

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

In this child custody dispute, plaintiff, Elham Ma Amawi, appeals by right the trial court's order granting defendant, Steven Alan Deming, sole legal and physical custody of their two minor children. Plaintiff has filed a brief on her own behalf on appeal. In her brief, she complains generally about the Friend of the Court (FOC), the trial court's referees, and the trial judge. She also claims that the trial court erred in numerous ways that she believes warrant relief. We affirm.

## I. BASIC FACTS

Defendant and plaintiff had a brief relationship during which they had two sons: CD and JA. The trial court initially awarded plaintiff sole legal and physical custody of the children.

Defendant admitted that he had a problem with alcohol and that he was arrested for drunk driving. He went to prison and was released in 2018. Defendant apparently addressed his alcohol abuse problem in prison and he tried to be a part of his sons' lives after his release. Plaintiff, however, did not agree that defendant should be a part of the children's lives, so she did not cooperate with the parenting-time orders. She eventually moved the children to another county and continued to deprive defendant of parenting time.

The trial court eventually found plaintiff to be in contempt for violating the parenting-time orders. Plaintiff also repeatedly tried to get defendant's parenting time suspended. Evidence in the record indicates that, even when defendant exercised parenting time, plaintiff used Children's Protective Services (CPS) and police officers to interfere with his parenting time. In May 2022,

after years of conflict over parenting time, defendant moved to change the children's custody to joint legal and physical custody because plaintiff alienated the children from him. A referee held a hearing on the proposed change in July 2022. The referee found that it served the children's best interests to award defendant sole legal and physical custody of the boys.

## II. PRELIMINARY MATTERS: RECORD, WAIVER, AND JURISDICTION

Both parties have appeared in this Court *in propria persona*, and both have included documents with their submissions on appeal that they believe this Court should review. This Court's review, however, is limited to the original record. See MCR 7.210(A); *Dora v Lesinski*, 351 Mich 579, 581; 88 NW2d 592 (1958). For that reason, we have only considered those documents that were part of the lower court record.

We further note that plaintiff submitted only one transcript to this Court, even after this Court's clerk informed her that she needed to submit all the relevant transcripts. See MCR 7.210(B)(1). We decline to consider any issue on appeal that cannot properly be decided as a result of plaintiff's failure to provide the relevant transcripts. See *Myers v Jarnac*, 189 Mich App 436, 443-444; 474 NW2d 302 (1991).

We have carefully reviewed the parties' briefs on appeal and, giving them the benefit of the doubt as parties appearing *in propria persona*, we have attempted to address every issue that they arguably have raised in this Court. To the extent that we have not addressed a particular claim of error, it is because the claim lacked factual or legal analysis sufficient to permit us to address it; therefore, we treat those claims as having been abandoned on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

Defendant also challenges this Court's jurisdiction. He asserts, in effect, that plaintiff filed her claim of appeal too soon because the trial court's order had not yet become final and plaintiff objected to the order in the trial court. The fact that the order changing custody had not yet taken effect is not dispositive. *In re Application of Ind Mich Power Co to Increase Rates*, 329 Mich App 397, 411; 942 NW2d 639 (2019). The trial court's order changing custody was a final order under MCR 7.202(6)(a)(*iii*). Plaintiff had to file her appeal within 21 days of its entry pursuant to MCL 7.204(A)(1)(a). Plaintiff filed her claim of appeal within 21 days of entry of the order at issue, and her challenge to entry of the order in the trial court did not deprive this Court of jurisdiction. See *Nordstrom v Auto-Owners Ins Co*, 486 Mich 962; 782 NW2d 779 (2010). Nevertheless, we agree that some of plaintiff's claims may be beyond the scope of her appeal. See MCR 7.203(A) (limiting jurisdiction to review of that portion of the order with respect to which there is an appeal of right). To the extent that this Court does not have jurisdiction to hear plaintiff's appeal as an appeal of right, in the interests of finality, we treat plaintiff's appeal of such issues as on leave granted. *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

## III. CHANGE IN CUSTODY

## A. STANDARD OF REVIEW

In child custody disputes, this Court reviews the trial court's factual findings by examining whether the findings are against the great weight of the evidence. See *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994). A finding is against the great weight of the evidence

when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Id*. at 878. This Court reviews a trial court's discretionary rulings in a custody dispute for a palpable abuse of discretion. MCL 722.28. "An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Finally, this Court reviews the trial court's selection, application, and interpretation of the law governing custody disputes for "clear legal error." MCL 722.28. The clear-legal-error standard is the same as the ordinary-legal-error standard. *Fletcher*, 447 Mich at 881. Accordingly, this Court reviews de novo the trial court's application of the law to the facts. See *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015). This Court similarly reviews de novo whether a party received due process. See *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

## B. NOTICE

On appeal, plaintiff briefly asserts that she had no notice of defendant's motion to change custody and no notice of the hearing. The record does not support her claim.

Plaintiff had a due-process right to service of notice "by the best means available, by methods reasonably calculated to give [her] actual notice of the proceeding and an opportunity to be heard and to present objections or defenses." *Hill v Frawley*, 155 Mich App 611, 613; 400 NW2d 328 (1986). Defendant formally moved for a change in custody on May 4, 2022. Because plaintiff's address was confidential, see MCR 3.203(F), an FOC staffer mailed the notice on May 9, 2022, to plaintiff's last known address, which was adequate under the court rules. See MCR 3.203(A); MCR 3.203(F) (stating that the party with the confidential address has the obligation to provide an alternate address for service).

Moreover, the referee inquired about the notice provided to plaintiff, and the FOC Supervisor, Kelly Milnickel, testified at the hearing that the FOC had received an e-mail from plaintiff in which she stated that she had actual notice of the hearing a week before the hearing date. Plaintiff asserted in that e-mail that she had no transportation and wanted the hearing adjourned. Milnickel stated that plaintiff had a habit of requesting adjournments premised on transportation; she had done so three times previously. Milnickel agreed that plaintiff had 10 weeks to arrange transportation for the hearing held in July 2022. Under the circumstances, plaintiff has not demonstrated that the procedures for giving notice of the hearing did not comply with minimum due process. See *Reed*, 265 Mich App at 157; *Hill*, 155 Mich App at 613.

## C. CHANGED CIRCUMSTANCES

We next address plaintiff's claim that defendant failed to establish proper cause or a change of circumstances that warranted a hearing on custody.

Michigan courts generally avoid unwarranted and disruptive changes to a child's custodial environment. See *Elliott-Mault v Elliott*, 329 Mich 544, 552-553; 46 NW2d 373 (1951). For that reason, a party requesting a change in the child's custodial environment must demonstrate a "change of circumstances" since the last applicable order before revisiting the child's custodial

environment. See *Sweet v Sweet*, 329 Mich 251, 255-256; 45 NW2d 58 (1950). The Legislature codified that requirement under MCL 722.27.

The Legislature provided that a trial court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). The Legislature established the higher burden of proof for changes that alter an established custodial environment to "minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an 'established custodial environment,' except in the most compelling cases." *Baker v Baker*, 411 Mich 567, 576-577; 309 NW2d 532 (1981). Accordingly, the party requesting the change must establish proper cause or a change in circumstances before the trial court may even hold a hearing to consider the request. See MCL 722.27(1)(c); *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003).

In *Vodvarka*, this Court identified the nature of the change that would warrant revisiting custody. It stated that "not just any change" will suffice to justify revisiting custody—the "evidence must demonstrate something more than the normal life changes" to rise to the level of a change of circumstances that would warrant revisiting custody. *Vodvarka*, 259 Mich App at 513-514. The change must be concerning the conditions of custody and must be changes that have had, or could have, a significant effect on the child's well-being. *Id*. at 513. Courts generally look to the best-interest factors stated under MCL 722.23 when considering whether the allegations implicate proper cause or a change in circumstances. *Id*. at 511-512. This Court in *Vodvarka* further clarified that the threshold determination typically involved a question of fact, but it stated its belief that trial courts will often be able to decide the question of proper cause or a change of circumstances without a hearing because the facts alleged would often be undisputed or could be accepted as true for purposes of deciding whether to hold a custody hearing. *Id*. at 512, 517. When there is a question of fact, the moving party has the burden to prove by a preponderance of the evidence that there is either proper cause or a change of circumstance that warrants revising custody. *Id*. at 509; see also *Corporan v Henton*, 282 Mich App 599, 603-604; 766 NW2d 903 (2009).

In May 2022, defendant moved to change custody; specifically, he asked the trial court to change the children's custody from sole legal and physical custody with plaintiff to joint legal and physical custody for both parents. Defendant asserted that plaintiff refused to follow the trial court's orders regarding parenting time over the past three years which warranted a change. He also alleged that plaintiff deliberately alienated the children, refused to disclose the location of the children, neglected the children's education, and had verbally and mentally abused him in front of the children during parenting exchanges. The trial court agreed that such sufficed to warrant an evidentiary hearing and scheduled it for July 22, 2022.

Under the best-interest factors, a trial court must consider "the willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The record amply demonstrated that plaintiff had repeatedly denied defendant parenting time over a period of years. Indeed, she had been held in contempt for denying defendant his parenting time and still refused to comply with the trial court's orders. The continued disruptions to defendant's parenting

time strongly implicated MCL 722.23(j). Moreover, because the record itself supported those allegations, the trial court could reasonably conclude that defendant demonstrated proper cause or a change in circumstances that warranted a custody hearing without first holding a hearing on his allegations. See *Vodvarka*, 259 Mich App 512, 517. The trial court did not err when it determined that defendant established proper cause or a change of circumstances that warranted revisiting the children's custody.

## D. BEST-INTEREST FACTORS

Plaintiff also argues that the referee did not adequately address the best-interest factors when deciding whether to grant defendant's motion to change custody. We disagree.

When considering whether and to what extent to change custody, the trial court had to consider the best-interest factors under MCL 722.23. See MCL 722.26a(1)(a). The Legislature determined that, for purposes of the child custody act, the best interests of the child means the "sum total" of the enumerated factors, which were to be "considered, evaluated, and determined by the court." MCL 722.23. The trial court had to state its findings and conclusions for each of the factors when rendering its custody determination. See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 451-452; 705 NW2d 144 (2005). Although the trial court was not required to discuss every "piece of evidence entered" and every "argument raised" by the parties, the record must "be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id*. at 452. The trial court was not required to give equal weight to each factor; it could consider the relative weight of the factors as appropriate to the circumstances. See *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).

The referee who held the hearing found that the children had an established custodial environment with plaintiff—even though he opined that that was in significant part because plaintiff had denied defendant the "opportunity to have any kind of an established custodial environment with these children in derogation of their best interests." For that reason, the referee correctly recognized, defendant had to prove by clear and convincing evidence that the proposed change in custody served the children's best interests using the factors stated under MCL 722.23. See MCL 722.27(1)(c).

Turning to the factors, the referee first found that the evidence that plaintiff had been depriving the children of parenting time with defendant implicated several factors. He opined that her behavior was not indicative of love and affection under Factor (a). See MCL 722.23(a). Instead, the referee found the behavior to be a "twisted, outlandish, irrational perception of the children's needs." He similarly felt that the behavior implicated plaintiff's capacity to give the children love, affection, and guidance under Factor (b). See MCL 722.23(b). The referee wrote that the behavior showed that plaintiff was "hobbling" the children from having a "normal and constructive adulthood." The referee also found that plaintiff's conduct amounted to a destabilizing force for purposes of Factor (d), see MCL 722.23(d), and found that she had done everything possible to prevent defendant from having a relationship with his children, which directly contravened Factor (j), see MCL 722.23(j). The referee found that these factors favored defendant.

On appeal, plaintiff asserts that no evidence proved that she had been alienating the children from defendant except for the two instances of contempt. She further claims that she had the right to protect the children from domestic violence under MCL 722.23(j).

Significant evidence in the record establishes that plaintiff had been deliberately preventing defendant from exercising his parenting time with the children. Defendant testified at the hearing that he last saw his children in February 2022, about five months before the hearing. He also testified that plaintiff had been found in contempt on at least two occasions for depriving him of parenting time. He noted that the trial court had earlier awarded him 10 weeks of make-up parenting time, which he received, but he had not received any other make-up parenting time. He noted that the problems with parenting time began in 2019 when plaintiff prevented him from having parenting time in a therapeutic setting.

Defendant also testified that, even when he had parenting time, the children resisted his efforts to parent. He stated that the children were disinterested in activities and referred to him by his first name. He stated that they did so because plaintiff wanted them to do so. Plaintiff also gave the children phones, which she used to disrupt parenting time. When he took the phones from the children, plaintiff called CPS and the police department to investigate him during his parenting time. Defendant also testified that one son had even tried to force himself to throw up during parenting exchanges so that he could claim to be sick and avoid parenting time. Milnickel confirmed that plaintiff had an extensive history of denying defendant parenting time.

The evidence strongly supported the finding that plaintiff had not, and would not, facilitate and encourage a close relationship between the children and defendant. See MCL 722.23(j). Indeed, the evidence showed that plaintiff actively sabotaged defendant's efforts to have a relationship with the children, which was an important factor to consider when determining what custody arrangement would be in the children's best interests. See *Martin v Martin*, 331 Mich App 224, 237-243; 952 NW2d 530 (2020). Moreover, no evidence established that plaintiff acted to protect the children from domestic violence; indeed, no evidence established that defendant had engaged in domestic violence. See *id*. at 238-239. Rather, the evidence showed that plaintiff placed her own desire to prevent defendant from having parenting time ahead of the children's needs, which implicated the other factors identified by the referee. On this record, it cannot be said that the referee's findings on these factors were contrary to the great weight of the evidence. See *Fletcher*, 447 Mich at 877-878.

Plaintiff alleges that defendant sent police officers to her home and caused them to violate her constitutional rights. She suggests that this evidence should have been considered against defendant.[1] Defendant testified that, after plaintiff completely cut him off from his children, he began to worry about their welfare. For that reason, he called police officers to perform welfare checks. The referee heard this testimony and apparently did not consider it worthy of note in his

---

[1] This may be a reference to an incident when defendant obtained the help of police officers to collect the children after plaintiff's arrest. However, there was no testimony or other evidence in the record about this alleged incident for this Court to consider.

-6-

findings. The referee's decision not to give this testimony any adverse weight was not contrary to the great weight of the evidence. See *id*.

Under Factor (c), the referee found that defendant had the ability to provide the children with the necessities of life. See MCL 722.23(c). Although there was no evidence concerning plaintiff's capacity to provide the children with the necessities of life, the referee found that neither party was favored under this factor. The referee also found the parties equal for purposes of moral fitness under MCL 722.23(f).

Plaintiff asserts on appeal that defendant lied about his criminal record and his failures as a father. She also claims that defendant again had been arrested, which under the terms of the parenting-time order, should—in her view—have resulted in the immediate suspension of his parenting time. She suggests that the referee should have considered those facts as well.

The referee heard defendant's testimony about his past encounters with the law. Defendant testified that he had stopped drinking and completed the conditions of his parole. He testified as well that he completed substance-abuse counseling. He stated that he was done drinking and had no other present issues. There was also no evidence at the hearing that established that defendant had again been charged with a criminal offense or had been drinking. Defendant further acknowledged that he had not been a good father to his daughter from a previous relationship.

The referee had a sufficient basis for assessing defendant's credibility and whether his past conduct was relevant to the best-interest factors for the motion at issue. The referee determined that defendant's history should not be held against him, and this Court must defer to the referee's findings. See *Berger*, 277 Mich App at 705.

Plaintiff also asserts that defendant lied about his child support obligations. She fails to cite where in the record he misrepresented his obligations, and she has not cited any record evidence to support her allegation. She similarly asserts that defendant lied about his living situation. More specifically, she claims that defendant actually lived with a girlfriend. Again, she cites no evidence to support her allegation. Accordingly, there is no basis for this Court to second-guess the referee's assessment of the weight and credibility to afford defendant's testimony. See *id*.

Plaintiff also writes in her appeal brief that she would be better able to provide for the children. For example,[2] she writes that she lives in a spacious brand-new home with four

---

[2] Over several pages at the end of her brief on appeal, plaintiff alleges that she would be the better parent in numerous other respects. She asserts—by way of example—that defendant is a drug dealer, a compulsive liar, a manipulator, a gambling addict, emotionally unavailable, and mentally unstable, and she states that he lives off women and uses them for sex and money. She also claims that defendant's new girlfriend mentally and physically abused the children. There are additional unsupported allegations, which are too numerous to cite and summarize. Plaintiff has not identified any record evidence to support these claims, and none of these claims are properly before this Court. See *Kent Co Aero Bd v Dep't of State Police*, 239 Mich App 563, 580; 609 NW2d 593 (2000).

bedrooms. She states that there is a five-foot flat-screen television in each child's room and that each child has his own Play Station, fridge, desk, laptop, iPad, and Alexa. Plaintiff's assertions on appeal are not evidence and cannot be considered on appeal. See *Kent Co Aero Bd v Dep't of State Police*, 239 Mich App 563, 580; 609 NW2d 593 (2000) ("A party is not permitted to enlarge the record on appeal by asserting numerous facts that were not presented at the trial court."). Plaintiff failed to appear at the evidentiary hearing, and there was no evidence presented at the hearing concerning the children's living arrangement while in her care. Because there was no evidence about plaintiff's living conditions, the referee's findings were not contrary to the great weight of the evidence. See *Berger*, 277 Mich App at 705.

The referee found that plaintiff changed her residence four times since 2020, which, it stated, was not stable. Whereas defendant had maintained the same home for the past two years. The referee found on that basis that Factor (e), see MCL 722.23(e), favored defendant.

As for Factor (h), which addresses the home, school, and community record of the children, see MCL 722.23(h), the referee recognized that there was little information because plaintiff had kept defendant in the dark about the children. The referee still found that this factor favored defendant based on the evidence that the children were living a transient lifestyle and had missed a lot of school under plaintiff's care.

Defendant admitted that he had had a problem with alcohol and that it led to arrests for drunk driving.[3] He stated, however, that he addressed that problem in prison. After his release, defendant remained sober and he began working as a contractor performing home renovations. Defendant testified that he had a modest income, rented the same home for about two years, and could provide the children with the basic necessities.

No record evidence contradicts defendant's testimony that he no longer drank, had consistent employment, and had a stable home. There was, as the referee noted, no evidence about plaintiff's ability to provide the necessities, but the referee still found the parties to be equal for purposes of morality and the ability to provide the necessities of life. There was also evidence that plaintiff had repeatedly moved the children over the past few years and that the children had an unacceptable number of absences from school. The evidence, therefore, supported the referee's finding that plaintiff led a transient lifestyle and was not providing the children with a stable home. Accordingly, the referee's findings as to these factors was not contrary to the great weight of the evidence. See *Fletcher*, 447 Mich at 877-878.

The referee found that there were concerns about plaintiff's mental health, even though she had not been diagnosed with a mental-health disorder. The referee found that defendant was mentally and physically healthy. From these findings, the referee determined that Factor (g), see MCL 722.23(g), favored defendant.

---

[3] Contrary to plaintiff's contention on appeal, there is no record evidence that defendant went to prison for domestic violence.

On appeal, plaintiff asserts that no evidence other than a "malicious accusation" that she had any mental-health problems existed. She further complains that defendant and Milnickel committed perjury.

The record reflects no evidence that plaintiff had been diagnosed with a mental-health condition. The only evidence tending to reflect on plaintiff's mental health were the testimonies by Milnickel and defendant about plaintiff's behaviors. Milnickel stated that plaintiff acted argumentative, communicated through racing speech, and appeared to have a view of events that did not conform to reality. Defendant testified that plaintiff tried to attack him during a parenting exchange, tended to "fly off the handle," was stuck in her own ways, and engaged in verbal and mental abuse. Although the referee acknowledged that plaintiff had not been formally diagnosed with a mental-health problem, the referee nevertheless felt that plaintiff's behaviors were sufficiently concerning to warrant a psychological examination.

Plaintiff's claims that defendant and Milnickel offered false testimony is not a sufficient basis for concluding that the referee's findings were contrary to the great weight of the evidence. It was for the referee to assess the weight and credibility of the witnesses' testimonies. See *Berger*, 277 Mich App at 705. The referee found defendant and Milnickel to be credible, and we will not second-guess the referee's assessment of their credibility. See *id*. Given the testimony that plaintiff had difficult and odd interactions with the FOC staff and others, evidence supported the referee's finding that at least a concern existed that plaintiff's mental health might be affecting her ability to provide the children with a healthy custodial environment. As such, the referee's finding that Factor (g) favored defendant was not contrary to the great weight of the evidence. See *Fletcher*, 447 Mich at 877-878.

The referee stated that the children were of an age to express their own views, which was a factor to consider under MCL 722.23(*i*). The referee noted, however, that he had not been able to ask the children about their preferences because plaintiff had not brought them to any hearings. Indeed, the referee found that obtaining the children's preferences appeared to be next to "impossible." The referee also stated concern that plaintiff would likely "sabotage any attempt" to obtain a free expression of preference. The referee concluded that, even if the children expressed a preference to remain in their mother's sole care, that preference would not be dispositive. Finally, the referee determined that Factor (k), MCL 722.23(k), which addressed domestic violence, and the catchall Factor (*l*), see MCL 722.23(*l*), did not warrant discussion.

Plaintiff asserts on appeal that defendant engaged in domestic violence against her and that defendant failed to follow court orders. No evidence anywhere in the record before this Court, however, supports those allegations. Plaintiff did not appear at the evidentiary hearing and she failed to submit any transcripts from any earlier proceeding that might support her claims. See *Myers*, 189 Mich App at 443-444. Because no evidence in the record contradicts the referee's findings on these last factors, it cannot be said that the findings were contrary to the great weight of the evidence. See *Fletcher*, 447 Mich at 877-878.

Examining all the factors, the referee determined that it served the children's best interests to order defendant to have sole legal and physical custody of both children. On this record, the referee did not commit a palpable abuse of discretion when he determined that it would be in the children's best interests to change custody. See *Berger*, 277 Mich App at 705.

## IV. OTHER CLAIMS OF ERROR

At various points in her brief on appeal, plaintiff asserts that the trial court erred in some respect when applying the law applicable to cases involving the termination of parental rights. This case involved a custody dispute between natural parents who both have—and continue to have—a fundamental liberty interest in the care and custody of their children. See *In re AP*, 283 Mich App 574, 591; 770 NW2d 403 (2009). The parties' custody dispute was governed by the Child Custody Act of 1970, MCL 722.21 *et seq.*, which the trial court properly applied to the filings at issue. See MCL 722.25(1) (requiring trial courts to resolve custody disputes between parents according to the best interests of the child); MCL 722.27 (listing the powers that a trial court has for resolving a custody dispute). There were no petitions under the juvenile code, see MCL 712A.1 *et seq.*; the trial court did not take jurisdiction over the children under the juvenile code; and the trial court did not terminate plaintiff's parental rights, see MCL 712A.2(b); MCL 712A.19b; MCR 3.961(A). Plaintiff continues to be the children's parent and continues to have her parental rights.[4]

Likewise, although a party has the right to the assistance of counsel in a case involving the termination of parental rights, see MCL 712A.17c(4); MCR 3.915(B)(1)(b), there is generally no right to have counsel at the state's expense in a custody dispute. Cf. MCL 722.26e(2)(a) (giving the trial court the authority to appoint a lawyer for a parent when a third party has initiated a custody dispute). This case also does not involve children with Native American ancestry. Accordingly, the trial court cannot be faulted for failing to apply the juvenile code to this custody dispute, for failing to appoint a lawyer to represent plaintiff at the state's expense, or for failing to apply the Indian Child Welfare Act, 25 USC 1901 *et seq.*, or the Michigan Indian Family Preservation Act, MCL 712B.1 *et seq.*

On appeal, plaintiff has also cited statutory provisions governing custody and child welfare from other states. The trial court had no obligation to apply foreign law. Foreign authorities may be persuasive, see *Franks v Franks*, 330 Mich App 69, 97 n 4; 944 NW2d 388 (2019), but plaintiff has not identified how her foreign authorities should be used in the proper application of Michigan law.

Plaintiff also asserts that the referee, the trial court, and the FOC staff were biased and engaged in misconduct. Plaintiff had the right to have an impartial decision-maker hear her case. See *Kern v Kern-Koskela,* 320 Mich App *212,* 231; 905 NW2d 453(2017). However, on appeal, plaintiff does not identify any evidence showing that the referee or the trial court were biased against her. She generally cites the fact that the referee made findings against her interests and that the trial court, for example, subjected her to contempt proceedings, which she feels were improper. "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a

---

[4] On appeal, plaintiff invites this Court to terminate defendant's parental rights based on her allegations. This Court is an error-correcting court, see *Apex Laboratories Int'l v Detroit*, 331 Mich App 1, 10; 915 NW2d 45 (2020), and does not have original jurisdiction to consider a petition to terminate a parent's parental rights, see MCL 712A.1(e) (defining the court to be the family division of a circuit court); MCL 712A.2(b) (defining the court's jurisdiction over minors in a termination proceeding).

motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Id.* at 231-232 (quotation marks and citation omitted).

Plaintiff also claims that—at a contempt hearing—the trial court promised her lawyer that he would "make the attorney win all other cases" if her attorney did not assist her at the contempt hearing. She further alleges that her attorney accepted the deal, and she accuses the trial court of conspiring with the court reporter to "forge" the transcripts against her. Again, plaintiff has no evidence to support her accusations. Moreover, by failing to submit the relevant transcripts from all the prior proceedings, plaintiff abandoned any claim that those proceedings showed evidence of bias. See *Myers*, 189 Mich App at 443-444. Indeed, there is no basis for this Court to conclude that the contempt proceedings were anything but proper. See *Kern*, 320 Mich App at 230 n 2 (recognizing that a party's failure to submit the relevant transcripts hampers this Court's ability to question a lower court's decision). On this record, plaintiff has failed to show that the trial court or referee held a bias against her or otherwise acted inappropriately. Plaintiff also has not identified any basis for concluding that the FOC staff held a bias against her or that Milnickel's testimony was anything other than accurate. In any event, even if Milnickel held a bias against plaintiff, it was up to plaintiff to explore that bias at the evidentiary hearing. See *Powell v Saint John Hosp*, 241 Mich App 64, 72; 614 NW2d 666 (2000) (noting that evidence of bias is always relevant).

Plaintiff also alleges that the FOC engaged in misconduct. She claims, by way of example, that the FOC improperly waived her right to receive child support, but the record belies that accusation. The record shows that the FOC calculated defendant's child support and enforced his obligation to pay consistent with the law until he went to prison. After defendant's release, the FOC again enforced the payment schedule consistent with the law.

Plaintiff also claims that the trial court ordered the FOC to arrange transportation for the parenting-time exchanges, but she cites no order to that effect, and she acknowledges that the FOC informed her that she was responsible for arranging her own transportation. Plaintiff further accuses the FOC of blackmailing her, protecting defendant, and working only for defendant's benefit. Plaintiff's accusations are completely unsupported.

Plaintiff also complains that defendant maliciously caused her to be prosecuted for contempt. More specifically, she asserts that the FOC gave her permission to take the children to Florida, giving her every right to deprive defendant of his parenting time. She also asserts that she had a medical excuse for failing to allow defendant to exercise his parenting time on another occasion, so she could not be held in contempt. Plaintiff claims as well that the FOC investigator lied under oath by stating at the hearing that defendant had not been arrested and had not had his parenting time suspended automatically, which would preclude a finding of contempt. She also states that defendant came at her in a rage during one contempt hearing.

Plaintiff has not appealed the trial court's orders of contempt, so whether the trial court erred when it ordered a sanction for contempt is not properly before this Court. See *In re Moroun*, 295 Mich App 312, 229; 814 NW2d 319 (2012). Additionally, she has not submitted any of the transcripts from the contempt proceedings. For that reason, there is no record permitting this Court's review of the propriety of those proceedings and no basis for this Court to conclude that

-11-

anyone lied under oath or misbehaved at the proceedings. See *Myers*, 189 Mich App at 443-444. Plaintiff has not established any other errors in the lower court proceedings that warrant relief.

## V. CONCLUSION

Plaintiff has not demonstrated that the trial court improperly ordered that the change of custody served the children's best interests. Accordingly, the trial court did not err.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford