*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 10, 2025
2:09 PM

Plaintiff-Appellee,

v

No. 368843
Saginaw Circuit Court
LC No. 19-046693-FH

ELISHER LEWIS MARLOW JR.,

Defendant-Appellant.

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Elisher Lewis Marlow, Jr., hereinafter referred to as defendant, appeals as of right his convictions and sentences for being a felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(3), and possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b(2). The trial court sentenced defendant, as a third habitual offender, MCL 769.11, to serve concurrent terms of imprisonment of 24 months to 10 years for each of the felon-in-possession convictions and terms of 10 years for each of the felony-firearm convictions, to be served concurrently with each other, but consecutively to the sentences for their respective underlying felonies. For the reasons set forth in this opinion we affirm the convictions and sentences of defendant.

## I. BACKGROUND

In March 2019, the defendant participated in a collaborative project that involved recording and broadcasting a music video on social media. This video was particularly notable for its prominent display of firearms, which drew the attention of law enforcement. Officers who viewed the video could identify the individuals involved based on the footage. Following an investigation, law enforcement discovered that defendant had a prior felony conviction, which prohibited him from possessing a firearm. This crucial detail heightened the concern surrounding his involvement in the video. Additionally, authorities discovered defendant's registered address with the Secretary of State, which provided them with a lead for further investigation.

After gathering additional evidence, law enforcement obtained a search warrant for defendant's residence. During the execution of this warrant, officers uncovered a loaded handgun

-1-

concealed beneath a mattress in the bedroom. Officers testified that this firearm was found near a sweatshirt that defendant had worn during the filming of the music video, suggesting a direct connection between defendant and the weapon.

Defendant acknowledged his presence in the music video and admitted that he did not have the legal right to carry a firearm on the day of the video shoot, stating that he therefore brandished a prop gun during the video. He noted that in the audio of one segment, he can be heard stating, "We had legal guns and illegal guns," which he clarified referred to the prop guns as well as the legally possessed firearms of his bodyguards. Defendant also confirmed that the gun seized during the police search was identical in color, including specific variations on the barrel, to the prop gun featured in his video.

Defendant explained that his manager, Charles Conley, who oversees his acting and music career, owns a Props and More business, which includes a theater, a recording studio, and a room dedicated to prop guns. He asserted that Conley issued an invoice to a film editor and a close associate, referred to as "Longway Joe," to rent prop guns. However, he conceded that the invoice was dated April 1, 2019, after the video production date, and he requested a receipt after being contacted by the authorities. He expressed uncertainty about why he processed payment after the props had been utilized but explained that he routinely employed the props, with Conley invoicing him monthly for the previous month's services.

Furthermore, defendant indicated that the residence searched by law enforcement belonged to Ashley Pruitt, noting that several acquaintances resided there, although Pruitt herself did not live at that location. He affirmed that he had previously dated Pruitt but was no longer in a relationship with her at the time of the search. Defendant testified that at the time of the search, he was residing at a different local address as well as in Tennessee, without any personal belongings kept at Pruitt's residence. He elaborated that he had not updated his address with the Secretary of State, citing his commitments to working on playground installations. Defendant stated that he was unaware of the firearm recovered by the police at the home, which was registered under Pruitt's name.

On appeal, defendant raises several arguments regarding his trial. He contends that the evidence presented was insufficient to justify his convictions; he claims that he was denied a fair trial due to the jury's observation of him in shackles, which may have prejudiced their perception of him; he argues that his convictions infringe upon double jeopardy protections, which safeguard individuals from being tried or punished for the same offense multiple times; he asserts that his sentence was excessively harsh in light of the circumstances; and he raises concerns about ineffective assistance from his trial counsel, suggesting that his legal representation failed to defend him effectively throughout the proceedings.

## II. SUFFICIENCY OF THE EVIDENCE

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

Due process, US Const, Am XIV,[1] requires that every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354,

---

[1] See also Const 1963, art 1, § 17.

366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).  To determine if the prosecution produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' "  *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).  Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction.  *Id*.

The elements of felon in possession of a firearm are that "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored."  *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016).  " 'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.' "  *Id*. at 268-269, quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

## A.  POSSESSION OF A FIREARM

In his appeal, defendant contends that the evidence presented raises reasonable doubt regarding his possession of a firearm based on his testimony that the gun featured in the music video in question was, in fact, a nonfunctional prop.  Defendant further points out that he provided a receipt for the rental of an imitation gun. However, he also acknowledged that the invoice was dated after the creation of the video and that the receipt was issued following police contact. A police officer testified to discovering a closed business under a different name at the address indicated on the invoice, and the purported owner of the prop company declined to participate in an interview, thus raising a question of fact whether the gun was real or a prop.  However, this Court leaves to the jury the responsibility to assess the credibility of witnesses. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013), citing *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). In this instance, the jury rejected defendant's assertion that the gun was a prop.  The question then arises as to whether there was sufficient evidence presented in the record from which the jury could reasonably conclude that the firearm in the video was an actual gun rather than a nonfunctional prop.

In his appeal, defendant asserts there was no direct testimony linking him to the firearm found at the home and presented at trial as evidence of the gun defendant used in the video. However, law enforcement obtained defendant's address from the Secretary of State and subsequently searched the residence, during which a handgun was discovered concealed beneath a mattress in the bedroom, alongside a sweatshirt identical to the one worn by defendant in the video. An officer compared the firearm in the video with the one retrieved during the search and noted that they matched in size, shape, and color, and shared identical features such as an accessory rail and visible wear marks, in addition to an activated loaded-chamber indicator. At trial, defendant acknowledged these similarities. Based on the evidence of defendant's appearance in a music video while brandishing a handgun, which closely resembled the weapon found at defendant's residence, along with the matching clothing, we conclude that it was reasonable for the jury to infer that defendant possessed the handgun. Moreover, the possession of the handgun may reasonably be inferred from its discovery in what appeared to be defendant's bedroom. "A defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant," as articulated in *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000).

As previously noted, an appellate court "does not interfere" with the fact-finder's "assessment of the weight and credibility of witnesses or the evidence." *Dunigan*, 299 Mich App at 582. The trier of fact determines "what inferences may be fairly drawn from the evidence" and "the weight to be accorded those inferences." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). " '[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), quoting *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). Here, the jury evaluated the evidence, and reasonably concluded that defendant possessed the seized handgun based on legally sufficient evidence. There being no due process violation, we conclude that defendant is not entitled to relief on this issue.

## B. POSSESSION OF AMMUNITION

In his Standard-4 brief, submitted according to Supreme Court Administrative Order 2004-6, defendant asserts that the evidence presented was insufficient to establish beyond a reasonable doubt that he possessed ammunition. During opening statements, the prosecution informed the jury that video footage depicted defendant brandishing a handgun that was loaded with one round in the chamber. During trial, a police officer testified that the "loaded chamber" flag on the seized handgun was elevated, signifying that the handgun was loaded. A photographic image reflecting this condition was shown to the jury. The officer further stated that he rendered the handgun safe by removing the ammunition.

Although the officer did not provide further details concerning the specific ammunition that was extracted from the handgun and no physical ammunition was displayed for the jury's review, his testimony about removing ammunition from the seized handgun, coupled with the evidence regarding the handgun's hardware which confirmed the presence of a bullet in the chamber, constituted sufficient grounds to support the assertion that the defendant possessed ammunition. Again, we find no due process violation. Accordingly, defendant is not entitled to relief on this issue.

## III. SHACKLES

Defendant also argues in his appeal that his fundamental right to due process was significantly compromised during the trial due to the requirement that he appear in court while wearing leg shackles—which, according to defendant, was an observable condition for the jury throughout the proceedings. Defendant contends that the trial court failed to provide any substantial justification or rationale for the decision to impose shackles on him, a choice that inherently suggested to the jury that he was both guilty and posed a danger to those present.

Moreover, defendant contends that his trial counsel provided ineffective assistance by neglecting to address the issue of the leg shackles. Defendant argues that the absence of any tactical reasoning to justify defense counsel's failure to challenge the use of restraints resulted in a situation where the jury may have formed a prejudiced impression that the necessity of such extreme measures indicated a threat to public safety, thereby influencing their perception of defendant's guilt. Defendant therefore concludes that the presence of the shackles, without appropriate objection or justification, likely undermined the integrity of the defense and compromised the overall fairness of the trial.

We cannot find in the record any evidence that defense counsel ever made any issue of shackles in connection with the proceedings in the trial court, leaving this issue unpreserved. Unpreserved claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if plain error occurred, and the error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*.

The Sixth Amendment guarantee of the right to a fair trial means that guilt or innocence is determined based on evidence introduced at trial "and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002) (quotation marks and citation omitted). The rule against a defendant's wearing shackles in view of the jury, except in exceptional circumstances, exists because the "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process," could make it difficult for a defendant to communicate with counsel, and otherwise fails to extend "respectful treatment" to a defendant in a dignified and formal environment. *Deck v Missouri*, 544 US 622, 629-632; 125 S Ct 2007; 161 L Ed 2d 953 (2005).

Freedom from conspicuous shackling is an essential component of a fair trial, and the shackling of a defendant during trial is permitted only in extraordinary circumstances, such as to prevent a defendant's escape, to prevent a defendant from injuring others, or otherwise to maintain an orderly trial. *People v Dunn,* 446 Mich 409, 425; 521 NW2d 255 (1994); *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). Previous conduct that demonstrates a lack of ability to conform to behavioral expectations, a lack of respect for authority, and "a tendency toward violence," may justify a trial court's decision for a defendant to appear in leg shackles and belly chains. *Id.* at 405. The prohibition against visible shackling during a trial "does not extend to safety precautions taken by officers while transporting a defendant to and from the courtroom." *People v Horn*, 279 Mich App 31, 37; 755 NW2d 212 (2008).

Here, appellate counsel asserts that defendant was in "leg shackles throughout the course of his trial." However, there is no indication in the record that defendant was shackled at all, let alone in what way, or at what times. Appellate counsel notes that defendant was called as a witness, and the trial court instructed him to "come up here" and "have a seat in the witness chair," then instructed defendant, "You can pull yourself forward, if you can; and make yourself comfortable." We fail to comprehend how this statement clearly indicated that defendant was required to wear shackles in view of the jury.

Further, the trial court noted that the trial was conducted in a conference center, rather than the county courthouse, in response to the need for COVID-19 safety measures. It is unknown whether the unconventional venue contributed to any security concerns.[2]

---

[2] The prosecution sought to introduce evidence on appeal of efforts undertaken to hide any shackles from the jury. This information was not presented in the lower court, and the prosecutor may not

In addition to the lack of a substantive factual basis for his claim of error, defendant has not adequately established that he suffered any prejudice as a result of the jury's potential observation of his shackles during the proceedings. The core of defendant's appeal lies with his argument that he possessed only a rented prop gun, a claim he attempted to substantiate with a provided receipt. However, the prosecution effectively countered this assertion with substantial evidence that raised significant doubts regarding the validity of defendant's claim. Notably, law enforcement was unable to locate the purported prop store mentioned in the invoice, which suggests the possibility of fabrication. Additionally, the individual identified as the owner of the establishment declined to cooperate by participating in an interview, further undermining defendant's credibility. It is also important to note that the invoice emerged only after law enforcement had initiated contact with defendant concerning the incident, which casts further doubt on its authenticity.

We discuss these points again to point out that this case did not focus on whether defendant posed a physical threat to the jury or the public, a notion often associated with the presence of shackles. Rather, the pivotal issue was the legality of defendant's firearm possession, particularly as depicted in a music video. The jury had the opportunity to directly observe the firearm in defendant's hand within the context of the video and was able to compare this with the actual firearm confiscated during a search of defendant's residence. This search revealed the firearm situated near the attire that defendant appeared to be wearing in the video, thereby providing a tangible connection. In light of the compelling nature of this evidence, defendant has failed to demonstrate any level of prejudice that would justify a finding of plain error with respect to the exposure of his shackles.

## IV. DOUBLE JEOPARDY

Defendant next argues in his appeal that the trial court committed an error in convicting him and imposing a sentence for both "felon in possession of a firearm" and "felony-firearm" resulting from the same incident. Defendant argues that this action constituted a violation of his constitutional right against being subjected to double jeopardy for a single offense, as defendant further contends that the language of the relevant statutes does not indicate a clear legislative intent to authorize multiple punishments for one act of firearm possession.

Defendant further argues that the language and historical context of the felony-firearm statute strongly imply that the Legislature intended to exempt "felon in possession" from being classified as a predicate felony. Additionally, defendant argues that the felon-in-possession statute suggests that it was intended to be included among the exemptions for felony-firearm offenses, given its similarities to two other exempted offenses. Consequently, he asserts, his convictions for both felon-in-possession and felony-firearm reflect two convictions for a singular offense. Again,

---

now expand the record on appeal. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). These assertions on appeal are not evidence and cannot be considered on appeal. See *Kent Co Aero Bd v Dep't of State Police*, 239 Mich App 563, 580; 609 NW2d 593 (2000). It is a fundamental principle of appellate practice in this state that: "A party is not permitted to enlarge the record on appeal by asserting numerous facts that were not presented at the trial court." *Id*.

the defense raised no such objection below, leaving this issue unpreserved. Accordingly, our review is for plain error that affected substantial rights. *Carines*, 460 Mich at 763.

The United States Constitution protects a criminal defendant from being "subject for the same offence to be twice put in jeopardy . . . ." US Const Amend V. The Michigan Constitution provides a similar guarantee, Const 1963, art 1, § 15, which was intended to be construed consistently with the Fifth Amendment. *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010). The double-jeopardy prohibition provides three related protections: (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction; and (3) against multiple punishments for the same offense. *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004).

Normally, the test to determine if one transaction that violates two distinct statutory provisions constitutes two offenses, or only one, is whether conviction under each statute requires proof of an element that the other does not. *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). However, "where, as here, the Legislature specifically authorizes cumulative punishment, the *Blockburger* test has no application." *People v Dillard*, 246 Mich App 163, 166 n 2; 631 NW2d 755 (2001).

In *Dillard*, 246 Mich App at 165-171, this Court considered "whether there is a clear indication of legislative intent to impose multiple punishment for the same offense" by examining the language of the felony-firearm statute, MCL 750.227b, in light of the defendant's felon-in-possession conviction. This Court recognized that the clear intent of the Legislature was that, with only four specified exceptions, " ' "every felony committed by a person possessing a firearm result in a felony-firearm conviction." ' " *Id*. at 167, quoting *People v Mitchell*, 456 Mich 693, 697; 575 NW2d 283 (1998), quoting *People v Morton*, 423 Mich 650, 656; 377 NW2d 798 (1985). This Court noted that the Supreme Court had concluded that the four exceptions explicitly stated in MCL 750.227b(1) were exclusive, and " 'that the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute.' "[3] *Dillard*, 246 Mich App at 165, quoting *Mitchell*, 456 Mich at 698. This Court concluded that a felon-in-possession charge does not constitute one of the specific exceptions to the felony-firearm statute, and therefore that "the Legislature clearly intended to permit a defendant charged with felon in possession to be properly charged with an additional felony-firearm count." *Dillard*, 246 Mich App at 167-168.

Defendant points out that the 1992 felon-in-possession statute, MCL 750.224f, was enacted after the 1976 enactment of the felony-firearm statute and argues that the Legislature could thus have intended to include felon-in-possession as one of the exceptions to the felony-firearm statute. However, this Court specifically rejected this argument, noting that the Legislature could indeed "have amended the felony-firearm statute to explicitly exclude the possibility of a conviction under

---

[3] The four exceptions are MCL 750.223 (unlawful sale of firearms), MCL 750.227 (carrying a concealed weapon), MCL 750.227a (unlawful possession of a firearm by a licensee), and MCL 750.230 (alteration of identifying marks on a firearm). *Dillard*, 246 Mich App at 168 n 3.

the felony-firearm statute that was premised on MCL 750.224f," but did not. *Dillard*, 246 Mich App at 168.

Defendant contends that the analyses of legislative intent regarding the felony-firearm statute articulated in *Dillard* and *Mitchell* are flawed, as the offense of being a felon-in-possession was not established when the felony-firearm statute was enacted. Thus, he claims that the focus should shift to the legislative intent behind the felon-in-possession statute at its enactment. Nevertheless, the pivotal inquiry centers on whether the Legislature permitted multiple punishments under the felony-firearm statute, which inherently depends on the commission of a predicate felony. In this instance, the predicate felony includes being a felon-in-possession of a firearm, and in the case of *Mitchell*, it also encompassed the acts of receiving or concealing a stolen firearm or ammunition. Following a thorough analysis of the statute's "subject, language, and history," our Supreme Court in *Mitchell* determined that the Legislature intended for the felony-firearm charge to function as "an additional felony charge and sentence whenever an individual possessing a firearm committed a felony," apart from those explicitly exempted. *Id*. at 696-698.

Moreover, this Court has evaluated the intent behind the felon-in-possession statute and concluded that "the two statutes serve distinct purposes that address different social norms." Consequently, this Court ruled that "they should be regarded as separate and capable of accommodating multiple punishments." *Dillard*, 246 Mich App at 168-171.

Defendant invites this Court to apply the *Blockburger* test. However, when " 'a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.' " *Mitchell*, 456 Mich at 695-696 (footnote omitted), quoting *Missouri v Hunter*, 459 US 359, 368; 103 S Ct 673; 74 L Ed 2d 535 (1983). In *People v Calloway*, 469 Mich 448, 451-452; 671 NW2d 733 (2003), the Court held that sentences for both felony-firearm and felon in possession did not violate the Double Jeopardy Clause in light of *Mitchell*, which *Dillard* followed.

Further, we must reject defendant's invitation as this Court is bound to follow the decisions of our Supreme Court, *People v Strickland*, 293 Mich App 393, 402; 810 NW2d 660 (2011), as well as our own published decisions issued on or after November 1, 1990 that have not been reversed or otherwise modified by the Supreme Court or a special panel of this Court. MCR 7.215(J)(1). Because the Supreme Court, in *Mitchell* and *Calloway*, and this Court, in *Dillard*, have decided this issue, this Court is bound to follow those decisions and defendant is not entitled to relief on this issue.

V. SENTENCE

Defendant argues that the trial court issued an excessive sentence, imposing a minimum of 24 months in prison. Defendant contends that the recommended sentencing guidelines failed to consider important mitigating factors, such as defendant's challenging upbringing and his struggles with mental health. Furthermore, defendant argues that this "crime" involved minimal wrongdoing, as it was simply the creation of a music video. Consequently, the punishment is disproportionate to this non-violent and harmless activity.

Whether a sentence violated the principles of reasonableness under the proportionality test is reviewed for an abuse of discretion. See *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). An abuse of sentencing discretion occurs where the sentence imposed does not reasonably reflect the seriousness of the circumstances surrounding the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), citing *Milbourn*, 435 Mich at 636.

The sentencing-guidelines range for the minimum sentence for defendant's felon-in possession conviction, with third habitual offender enhancement, was 9 to 34 months. The trial court imposed a sentence of 24 months to 10 years. That minimum was well within the guidelines range, thus there is a rebuttable presumption of proportionality. *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023). It is a defendant's burden to demonstrate that "a within-guidelines sentence is unreasonable or disproportionate." *Id.*

The reasonableness of a sentence is determined by evaluating whether it was " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. This Court recited several factors bearing on the proportionality of a sentence:

> (1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted).]

A court should also consider " 'the nature of the offense and the background of the offender.' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 651.

Here, the trial court stated that it relied on information in the presentence investigation report (PSIR), particularly regarding the "nature and circumstances of the offense," as well as defendant's record. The court noted that defendant had previous convictions for weapons offenses, indicating that he was aware he was violating the law by possessing a firearm. The court stated that it decided defendant's sentence "upon considering the sentence guidelines range and to deter others and protect society," and added, "I believe this sentence is proportionate to the seriousness of defendant's conduct and record and produces a proportionate sentence."

Defendant argues that his sentence was disproportionate because his crime involved only the making of a music video and did not involve any dangerous or aggressive behavior, unlike his previous drug-related and theft convictions. However, as the trial court emphasized, the seriousness of the defendant's conviction was due to his possession of a firearm as a person previously convicted of felonies. He had a firearm, whether displayed in a music video or hidden under his mattress, knowing that his actions were against the law.

The trial court also noted defendant's prior convictions, which extend beyond those related to firearms. The Presentence Investigation Report (PSIR) detailed six prior felonies, one misdemeanor, and six juvenile adjudications. Significantly, defendant's arrest concerning the current charges occurred only one month and one day after his discharge from parole, during which

time he was arrested for possession of cocaine while on bond for this case. Despite these facts, defendant contends that his frequent convictions indicate a systemic failure to rehabilitate him, suggesting that the sentence in this case did not prioritize his rehabilitation. This is a somewhat strange, if not completely circular, argument, as defendant's ongoing difficulty in conforming his behavior to legal standards highlights his limited prospects for rehabilitation. The trial court's decision to impose a harsher term of imprisonment than that recommended by defense counsel may ultimately serve to motivate the defendant to seek better outcomes and reduce the likelihood of recidivism.

Defendant contends that his challenging upbringing—marked by a parent with mental health issues and his own personal struggles—should be viewed as mitigating factors. The Presentence Investigation Report (PSIR) indicates that defendant recalled his mother's recurrent admissions to a psychiatric hospital and his father's absence during his formative years. In contrast, defendant also claimed to have had a positive childhood and a supportive family environment, characterized by adequate financial resources and discipline, and he denied any experiences of abuse. Furthermore, he asserted that he is currently in good mental and physical health. As a result, the evidence does not substantiate defendant's assertion that his possession of a firearm was either justified or mitigated by childhood trauma.

The record indicates that the challenged minimum sentence, which was in the middle of the advisory guidelines range, was reasonable because the court referenced factors mentioned in *Steanhouse*, 313 Mich App at 46, such as the seriousness of the offense, defendant's lack of progress, even with judicial intervention, in maintaining lawful behavior, and his otherwise demonstrably poor potential for rehabilitation. The trial court well established by reference to matters of record that its sentence was " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. On this record we cannot conclude that defendant has demonstrated that his sentence is unreasonable or disproportionate in relation to the circumstances surrounding both the offense and the offender. *Id*.

## VI. ASSISTANCE OF COUNSEL

In his brief on appeal, defendant's appellate counsel argues that defendant's trial counsel was deficient for having failed to object in connection with the alleged use of shackles at trial, and defendant, in his Standard-4 brief, argues that his trial counsel's performance was deficient in several other respects.

Review for unpreserved claims of ineffective assistance of trial counsel is limited to mistakes apparent on the record. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). The constitutional question whether an attorney provided ineffective assistance, depriving a defendant of the right to counsel, is reviewed de novo. *Id*.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). In order to prevail on a claim of ineffective assistance, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's

deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). A defendant must also show that the resultant proceedings were "fundamentally unfair or unreliable." *Id*.

The right to effective assistance of counsel is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). A defense attorney's performance is deficient if "it fell below an objective standard of professional reasonableness." *Jordan*, 275 Mich App at 667.

## A. EXONERATING EVIDENCE

Defendant argues that his trial counsel provided ineffective assistance because he "failed to submit evidence defendant alleges that would of changed the outcome of his conviction, when his counsel failed to submit the prop gun recites [sic] into evidence, when in fact the jury asked to see them." During cross-examination, defense counsel asked a trooper if he had seen the invoice for a prop gun from Props & More and had him examine the invoice. The prosecuting attorney had the trooper testify about his investigation into the invoice's contents, specifically his attempts to locate Props & More and interview its owner. Defendant testified that the invoice indicated his friend had rented a prop gun that defendant used in the video and that he was the one who paid the invoice. Defense counsel attempted to introduce the invoice into evidence by establishing a foundation; however, the trial court postponed its ruling and never revisited the matter after the prosecuting attorney objected, claiming the document was inadmissible as hearsay because someone other than the defendant was listed as the renter of the gun, and the alleged shop owner had generated the invoice. On this record, we conclude that defense counsel's performance was not deficient concerning the prop gun invoice, because the jury was fully informed of its contents through the testimony of two witnesses.

## B. DOUBLE JEOPARDY

Next, defendant argues that his trial counsel's performance was deficient for failing to object to the "sentencing guideline scoring, when in fact the defendant was charged and convicted of two of the same charges and or multiple firearms charges." It is not clear what aspect of trial counsel's performance this statement refers to, but the case defendant cites in support, *People v Haggart*, 142 Mich App 330, 345; 370 NW2d 345 (1985), presented a double-jeopardy challenge to the defendant's convictions of "eight counts of felony-firearm where the eight offenses were committed during one continuous transaction." However, *Haggart* is inapplicable because defendant's possession of ammunition was established when the police extracted ammunition from the firearm at defendant's residence, while the possession of the firearm was shown in the music video—thus, two separate criminal transactions underlay his two felony-firearm convictions. Any objection by defendant's trial counsel on double-jeopardy grounds would not have been successful. Failing to advance a meritless argument or raise a futile objection does not constitute ineffective

assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defendant is not entitled to relief on this issue.

## C. TRIAL PREPARATION

Next, defendant argues that defense counsel "failed to interview the defendant['s] witnesses." However, that single-sentence assertion is the extent of the legal basis defendant provides for this argument. He offers no legal or factual support, including not naming any of his potential witnesses, or specifying any helpful testimony they might have offered. We note that within the record there was a discussion during which defense counsel stated that he was willing to call Ashley Pruitt, the owner of defendant's residence. The trial court granted defense counsel time to consult with Pruitt, who was present. But defense counsel acknowledged that, because Pruitt would be subject to cross-examination, calling her as a witness "jeopardizes" the defense. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 39; 688 NW2d 308 (2004) (quotation marks and citation omitted). In the absence of evidence conflicting with defense counsel's assertion that Pruitt would "jeopardize" defendant's case, we conclude that defendant is not entitled to relief on this issue.

## D. FELONY-FIREARM, THIRD OFFENSE

Defendant next argues that defense counsel should have objected to the "sentence for his felony-firearm 3rd conviction when it imposed a ten year sentence when in fact the defendant was convicted before of felony firearms charges in a single proceeding." Defendant cites *People v Sawyer*, 410 Mich 531, 535-536; 302 NW2d 534 (1981), in which the Supreme Court held that the five-year term of imprisonment for a second conviction of felony-firearm may be imposed only when the second offense is subsequent to the first conviction. In this case, according to the PSIR, defendant was convicted of two counts of felony-firearm in November 2012. Accordingly, defendant's new convictions of felony-firearm were subsequent to his first two convictions, thus charged and sentenced consistently with *Sawyer*.

The language of the felony-firearm statute provides, "Upon a third or subsequent conviction under this subsection, the person shall be punished by imprisonment for 10 years," MCL 750.227b(1), and defendant had twice been convicted of felony-firearm. "A defendant with two prior felony-firearm convictions who is again convicted of felony-firearm is a third felony-firearm offender under MCL 750.227b(1), regardless of whether the two prior felony-firearm convictions arose out of the same criminal incident." *People v Wilson*, 500 Mich 521, 528; 902 NW2d 378 (2017). On this record, defendant is not entitled to relief.

## E. WITNESSES' STATEMENTS

Next, defendant argues that his trial counsel's performance was deficient by failing "to have the arresting officer read off the witness['s] statements when in fact there [sic] statements were most favorable to the defendant." However, defendant does not disclose the identity of any potential witnesses or any testimony that could have benefitted his case. Most importantly, police reports of witness statements and an officer's recounting of statements made to him would be

considered inadmissible hearsay. Defendant does not propose any exceptions to, or exclusions from, the hearsay rule that his trial counsel could utilize to seek admission of such statements. Therefore, defense counsel cannot be faulted for failing to elicit inadmissible statements, and defendant is not entitled to relief on this issue.

## F.  FORMS

Defendant argues that his trial counsel failed to "submit his appeal by right form," and to present defendant with a bill of particulars.  However, both arguments are unsupported by the record.  It was defendant's burden to make a testimonial record offering evidence supporting his claim that "excludes hypotheses consistent with the view that his trial lawyer represented him adequately."  *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997).  Moreover, despite any alleged failure to transmit a pertinent form, defendant's appeal seems to have proceeded unabated.

MCR 6.112(E) provides that a trial court "may order the prosecutor to provide the defendant a bill of particulars describing the essential facts of the alleged offense."  In this case, it is unclear what information defendant had regarding his charges at the various stages of the proceedings. However, the record does reveal that defendant underwent a preliminary examination on November 22, 2019. When a preliminary examination adequately informs the defendant of the charges against him, the need for a bill of particulars is eliminated.  *People v Harbour*, 76 Mich App 552, 557; 257 NW2d 165 (1977).  Therefore defendant's complaints about not receiving a bill of particulars warrants no appellate relief.

## G.  SHACKLES

Appellate counsel asserts that defense counsel's performance was deficient for failing to object in relation to his allegation that he was forced to wear shackles in view of the jury.  However, it is defendant's burden to present a testimonial record of evidence supporting his claim that " 'excludes hypotheses consistent with the view that his trial lawyer represented him adequately.' "  *Mitchell*, 454 Mich at 163, quoting *People v Ginther,* 390 Mich 436, 442-443; 212 NW2d 922 (1973).  As noted above, defendant has not demonstrated the factual basis for any claim that trial counsel failed to prevent the jury from seeing him in shackles, or that counsel did not request the trial court to provide a justification for the alleged shackles.

Affirmed.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel